213 N.J. Super. 283 (1986)
517 A.2d 166
OHIO CASUALTY GROUP, PETITIONER-RESPONDENT,
v.
AETNA CASUALTY & SURETY COMPANY, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 30, 1986.
Decided October 30, 1986.
*284 Before Judges O'BRIEN, SKILLMAN and LANDAU.
Nancy S. Freeman argued the cause for appellant (Freeman and Barton, attorneys; Nancy S. Freeman, on the brief).
William W. Summers argued the cause for respondent (Montano, Summers, Mullen, Manuel & Owens, attorneys; William W. Summers, on the brief).
LANDAU, J.S.C. (temporarily assigned).
This is an appeal by Aetna Casualty & Surety Company from final judgment of the Division of Worker's Compensation in *285 favor of petitioner Ohio Casualty Group as subrogee of Victor Vittorino under personal injury protection (PIP) provisions of an automobile insurance policy.[1] Aetna Casualty & Surety Company provided worker's compensation insurance for Vittorino's employer Hydro-Nuclear Services (Hydro-Nuclear).
The Worker's Compensation Judge interpreted N.J.S.A. 34:15-36 to find that Vittorino's injuries occurred within the scope of his employment. We reverse.
The facts are uncontroverted.
In 1981, Vittorino was a salaried employee of Hydro-Nuclear, a New Jersey company which contracted to provide services for a nuclear power plant in Vermont. He was the day shift supervisor for a number of other Hydro-Nuclear employees who were assigned to the job site. Vittorino and the others stayed at a Holiday Inn about 12 miles from the power plant. All received a per diem allowance for room and board, and were not required to stay at the Holiday Inn. Vittorino initially travelled with a coemployee in a company van from Marlton, New Jersey to Vermont, bringing a high pressure pump to the job site, and thereafter he drove the van to and from the Holiday Inn and job site. Hydro-Nuclear permitted, and did not require employee reimbursement for, use of company vehicles for minor local personal trips. It did not discourage social activities for relaxation after work.
On October 22, 1981, Hydro-Nuclear's president and its operations manager went to Vermont in a company car to check progress. That evening Vittorino and his immediate supervisor joined with these company officials in a dinner hosting executives of the Vermont power plant. After dinner the Hydro-Nuclear group left their customers and returned to the Holiday Inn at approximately 10:30 p.m. They went into the bar, but Vittorino separated himself from the employer group and socialized with friends he had made while in Vermont. Although *286 sometimes required to be on "24 hour call," he was not on such call that evening.
One of Vittorino's Vermont friends in the bar was a part-time Holiday Inn cocktail waitress, who that night was a guest at an unrelated party in the next room. When her friends became intoxicated, she asked Vittorino for a ride to her home which was approximately three miles from the Holiday Inn.
Vittorino approached one of the visiting Hydro-Nuclear officials and requested permission to borrow the company car which had been driven to Vermont that day. He explained that he wished to drive the woman home, and was given the car keys. There is no question that Vittorino received proper authorization to use the company car. While driving her home, he was seriously injured in an automobile accident.
The PIP carrier made medical payments on his behalf, and now seeks subrogation recovery through the worker's compensation action. There is no dispute as to its right to so institute the worker's compensation proceeding.

THE COMPENSATION JUDGE'S DECISION
In considering whether the accident was one "arising out of and in the course of his employment" under N.J.S.A. 34:15-7, the compensation judge defined the principal issues to be whether N.J.S.A. 34:15-36 "rendered the accident sustained non-compensable," and whether the decision in Cavalcante v. Lockheed Electronics Co., 85 N.J. Super. 320 (Cty.Ct. 1964), aff'd 90 N.J. Super. 243 (App.Div. 1966) was "still the law in the State of New Jersey?"
Citing familiar authority requiring that the Worker's Compensation Act be given a liberal construction in aid of its remedial purpose, the Compensation Judge concluded generally that "the injured employee, Mr. Victor Vittorino, was under the mantle of protection of the New Jersey Worker's Compensation Law from the time he left Marlton, New Jersey and all during the time he was in Vermont, and that this protection would continue up until the time he had returned safely to his home in *287 Marlton, New Jersey ..." He found that Vittorino's operation of a company vehicle brought him within the provisions of the act because he was operating a vehicle on "business authorized by the employer"; that Nebesne v. Crocetti, 194 N.J. Super. 278 (App.Div. 1984) provided additional authority for compensability because Vittorino was being paid for his "travel time" by reason of continuation of his annual salary while on travel status; and that the claim should be compensable because the employer was aware of the purpose for which the company car was borrowed. In this respect he found that, because the company would probably have chivalrously responded to the call of a "damsel in distress," transportation of Vittorino's friend should be deemed a "special mission" which would bring the off-premises injury within the definition of "employment."
The Compensation Judge also held the claim compensable as occurring on the "job site" because that phrase "encompasses any place where the injured employee may have been which could not or would not be construed as an unreasonable deviation from his normal activities with respect to his assignment." We understand this finding to be a way of stating a conclusion that Vittorino's off-hours social activities, including driving his female friend home, were not unreasonable for an employee sent to Vermont by his employer for an extended period, and that any accident which occurred in the course of such reasonable social activities should be deemed to arise out of and in the course of his employment under Cavalcante, 85 N.J. Super. 320.
The Compensation Judge also invoked, somewhat tentatively, an equitable concept of "estoppel" against the compensation carrier, apparently held to arise by reason of the employer's grant of permission for use of the car.

THE LEGAL ISSUES
Our review of the compensation award below must begin, not with the inquiry whether N.J.S.A. 34:15-36 "rendered the accident sustained non-compensable," but whether Vittorino's accident *288 is compensable under that statute. The inquiry in this case is solely one of law. In pertinent part N.J.S.A. 34:15-36 provides:
... when the employee is required by the employer to be away from the employer's place of employment, the employee shall be deemed to be in the course of employment when the employee is engaged in the direct performance of duties assigned or directed by the employer; but the employment of [an] employee paid travel time by an employer for time spent travelling to and from a job site or of any employee who utilizes an employer authorized vehicle shall commence and terminate with the time spent travelling to and from a job site or the authorized operation of a vehicle on business authorized by the employer.
In Mangigian v. Franz Warner Assocs., Inc., 205 N.J. Super. 422 (App.Div. 1985) we recently reviewed the history of decisions which preceded amendment of N.J.S.A. 34:15-36 in 1979 as part of an extensive revision and reform of the Worker's Compensation Act. There, and in Ehrgott v. Jones, 208 N.J. Super. 393 (App.Div. 1986) we noted the clearly expressed legislative purpose to curtail sharply compensability for off-site accidents. Mangigian at 205 N.J. Super. at 426, 427; Ehrgott 208 N.J. Super. at 397.[2]
As we recognized in Ward v. Davidowitz, 191 N.J. Super. 518, 523 (App.Div. 1983) the starting point of the amendment was to eliminate an employer's responsibility for accidents occurring in areas not under the employer's control unless the employee is required to be away from the work place by the employer.
When the employee is required to be away from the conventional place of employment, the initial central inquiry is whether the employee is in the direct performance of duties assigned or directed by the employer. N.J.S.A. 34:15-36; Nemchick v. Thatcher Glass Mfg., 203 N.J. Super. 137 (App.Div. 1985).
The sense of the statute is that when an employee is paid for travel to and from a job site, he is deemed in the course of *289 employment during the course of his actual travel from the commencement of such compensated trip to its termination at the job site, and vice-versa. In addition, if the employee has been authorized to operate a vehicle on business, an accident occurring during the course of such operation on business is compensable. N.J.S.A. 34:15-36. See Mahon v. Reilly's Radio Cabs, Inc., 212 N.J. Super. 28, 34 (1986).
Central to the application of the statutory language has been the recognition that "whether an employee is deemed within the course of employment must be resolved on a case-by-case basis." Nemchick 203 N.J. Super. at 143. For example, we held in Nemchick that an accident on the way home from a coffee shop, after an all-night emergent assignment at a customer's plant entailing 27 sleepless hours, occurred during the direct performance of duties because the underlying circumstances were such as to render the journey home an integral part of the assigned duties. Ibid. Similarly, we have held that an employee's travel to and from an employer sponsored professional meeting constituted part of a "special mission." Ehrgott, 208 N.J. Super. at 397.
The undisputed facts in this case disclose that Vittorino had returned to the Holiday Inn, and except for requesting and securing the company car, had ended all contact with his superiors earlier in the evening. He was not on duty. All work-related assignments had been completed and he was safely ensconced in the motel until he decided to take a personal trip to his friend's home.
Under N.J.S.A. 34:15-36, neither the employer's knowledge of Vittorino's reason for borrowing the car, nor its authorization to use the company car, changes this purely personal mission into employer business, absent an express direction (as distinct from authorization) from a qualified superior. Considering the purpose of the recent statutory amendments, as articulated in Mangigian, Ward and Ehrgott, it would pervert the clear legislative intent to hold that such express direction may be imputed, as held below, because of the likelihood that *290 the employer would have responded to the call of a "damsel in distress." Whatever call was being heeded, it was not the business of Hydro-Nuclear.
Just as in Mangigian, Vittorino was not here performing a "special mission" on behalf of his employer when the injury was sustained, nor was this a case "in which an employee, having identifiable time and space limits on his employment, deviates from his normal daily routine and embarks upon a journey to perform a work-related task." Mangigian, 205 N.J. Super. at 427, 428.
The holding below that Vittorino's salary while on travel status justified a determination that he sustained an injury while being paid for his "travel time," is not supported by the facts, the statute, or applicable authority. As we earlier observed, absent a "special mission" or the direct performance of assigned duties, the statute only deems an off-site employee to be in the course of employment if he is being paid for travel to and from the job site and if the accident occurs during the course of his actual travel to and from the job site. Vittorino did not receive reimbursement for his travel in the company car to and from his friend's home, nor was he performing an assigned duty or engaged in a "special mission." Nebesne v. Crocetti, 194 N.J. Super. 278 furnishes no authority for the Compensation Judge's travel rationale. To the contrary, compensation was there denied for a travel related accident under N.J.S.A. 34:15-36 because the employee received no specifically identifiable travel pay.
The remaining basis for the decision below is its broad reliance upon Cavalcante v. Lockheed Electronics Co., 85 N.J. Super. 320 (Cty.Ct. 1964), aff'd. 90 N.J. Super. 243 (App.Div. 1966). This opinion held that where an employee was sent to a distant place to perform intensive and emergent business duties for an indeterminate time and engaged in reasonable physical relaxation activities an accident occurring in the course of such activities could be held compensable. Although we question whether the Cavalcante opinion ever furnished support for a *291 holding that Vittorino was in the course of his employment at all times after leaving Marlton, New Jersey until his return, (see e.g., Hebrank v. Parsons, 88 N.J. Super. 406 (App.Div. 1965)), the amendment of N.J.S.A. 34:15-36 has surely precluded such a blanket determination. Under its standards, an injury suffered during voluntary and purely personal automobile travel is not automatically compensable because the injured employee is on assignment away from his home base. Ehrgott, 208 N.J. Super. at 398, 399; Mangigian, 205 N.J. Super. at 423, 428.
This does not preclude showing, in the case-by-case analysis called for in Nemchick, special underlying circumstances which may properly render a given journey part of an employee's assigned duties or a "special mission." No such finding is here warranted.
As to the "estoppel" referred to below, we perceive no equitable rule which estops the worker's compensation carrier from defending this case. Our review discloses that no equitable claims or defenses were asserted by either party, and the facts demonstrate no inequitable conduct by the employer such as to bar its carrier's defense.
The judgment is reversed.
NOTES
[1] The injured employee made no independent worker's compensation claim.
[2] The Compensation Judge could not have been aware of Ehrgott as it was decided after the decision below, and probably would not have learned of Mangigian as it was decided but not published until after the decision below was rendered.