639 A.2d 407

DOROTHY BROWN, PETITIONER–RESPONDENT, v. AMERICAN RED CROSS, RESPONDENT–APPELLANT, AND HANOVER INSURANCE COMPANY, INTERVENOR–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued March 2, 1994—Decided April 8, 1994.

---

[2] A copy of this ordinance has not been submitted to us but was quoted in the briefs without any challenge. There is no suggestion that the quotation is inaccurate.

Before Judges HAVEY, ARNOLD M. STEIN and ARIEL A. RODRÍGUEZ.

*Christine M. Coté* argued the cause for appellant (*Cooper, Perskie, April, Niedelman, Wagenheim & Levenson,* P.A., attorneys; *Frank A. Petro* and *Ms. Coté* on the brief; *Mr. Petro* on the reply brief).

*Phyllis Coletta* argued the cause for intervenor-respondent (*Megargee, Youngblood, Franklin & Corcoran,* attorneys; *Neil Stackhouse* and *Ms. Coletta* on the brief).

No brief was filed on behalf of respondent Dorothy Brown.

The opinion of the court was delivered by

HAVEY, J.A.D.

Respondent American Red Cross appeals from a judgment of the Division of Workers' Compensation in favor of petitioner Dorothy Brown. Petitioner, while employed by respondent, was injured in an automobile accident on her way home from one of respondent's blood-donor sites. The judge of compensation found that her injuries were compensable according to the definition of "employment" under *N.J.S.A.* 34:15–36, because she was receiving travel-time pay for her journey home. We agree and affirm.

As a phlebotomist, petitioner traveled to various sites in southern New Jersey on behalf of respondent to draw blood from donors. On July 1, 1988, she left her Atlantic City residence and traveled to a Mount Holly donor site approximately fifty miles away. She worked five hours, and on her way home she was involved in an automobile accident, sustaining multiple injuries. She thereupon filed the present claim petition seeking workers' compensation coverage.[1]

Petitioner and a co-worker testified that when they were hired as phlebotomists they agreed to use their own vehicles to travel to and from the donor sites. In turn, respondent agreed to pay them $8 per hour for an eight-hour day despite the fact that they

---

[1] Petitioner's Personal Injury Protection carrier, Hanover Insurance Company, intervened.

worked only five hours at the donor sites. Petitioner stated that payment of the additional three hours was understood by the parties to be "travel time" pay because she and other phlebotomists "had to pay for our own gas and our own upkeep of our car."

William Bailey, respondent's Director of Human Resources, testified in a deposition given during a related suit and introduced in the workers' compensation proceeding, that respondent had a written policy to pay for travel time:

> If [phlebotomists] traveled over ... one half an hour they would be on the clock and paid. That would be an hour, half hour around, come back from the blood mobile bank site.

Bailey stated that the reason for the policy was to give phlebotomists travel-time pay and mileage because their willingness to travel substantial distances in their own vehicles benefitted respondent. He explained that:

> [The phlebotomists] would have to travel throughout the regions' territory and we felt that since we could not provide transportation we would pay the mileage and the salary for the time so that they would not incur the expense.

Employees were also given twenty cents per mile.

In a January 18, 1989 letter to respondent's labor counsel, Bailey acknowledged that because petitioner was twelve miles from the Mount Holly donor site when the accident occurred, she was "on the clock and was paid ... for hours worked" after leaving the site. However, during the workers' compensation proceeding, Bailey stated that respondent's written policy was not applicable because employees had to actually work over forty hours per week to receive compensation based on travel time. Respondent's Director of Donor Services also testified that the policy applied only to the computation of overtime. She further stated that the eight-hour guarantee was not intended to be a payment for travel time, but was simply a "perk" used as a recruiting technique.

Judge Lashman found that "travel was a part of the wage and all travel was included ... by payment for two or three hours in excess over actual time at the differing daily job sites." In so

concluding, the judge determined that the testimony given by respondent's witnesses was of "dubious credibility."

The 1979 amendment to the Workers' Compensation Act adds a definition of "employment" (L.1979, c. 283, § 12), which reads in pertinent part as follows:

> Employment shall be deemed to commence when an employee arrives at the employer's place of employment to report for work and shall terminate when the employee leaves the employer's place of employment, excluding areas not under the control of the employer; provided, however, when the employee is required by the employer to be away from the employer's place of employment, the employee shall be deemed to be in the course of employment when the employee is engaged in the direct performance of duties assigned or directed by the employer; but the employment of employee paid travel time by an employer for time spent traveling to and from a job site or of any employee who utilizes an employer authorized vehicle shall commence and terminate with the time spent traveling to and from a job site or the authorized operation of a vehicle on business authorized by the employer.
>
> [*N.J.S.A.* 34:15–36.]

It has been repeatedly held that the 1979 amendment was intended to sharply curtail compensation for off-premises accidents, and thus has been interpreted, with two pertinent exceptions, "as not allowing compensation for accidents occurring in areas outside of the employer's control, as when the employee is going to and from work." *Zelasko v. Refrigerated Food Express,* 128 *N.J.* 329, 336, 608 *A.*2d 231 (1992). The two exceptions are:

> A "special-mission" exception allows compensation at any time for employees
>
> 1. required to be away from the conventional place of employment;
>
> 2. if actually engaged in the direct performance of employment duties.
>
> A "travel-time" exception allows portal-to-portal coverage for employees
>
> 1. paid for travel time to and from a distant job site, or
>
> 2. using an employer-authorized vehicle for travel time to and from a distant job site.
>
> [*Ibid.*]

Respondent notes that the legion of cases decided since the 1979 amendment have found no compensability in nearly all cases involving off-site accidents. *See Ibid.; Serrano v. Apple Container,* 236 *N.J.Super.* 216, 220–21, 565 *A.*2d 417 (App.Div.1989), *certif.*

*denied,* 121 *N.J.* 591, 583 *A.2d* 298 (1990); *Manole v. Carvellas,* 229 *N.J.Super.* 138, 143, 550 *A.2d* 1278 (App.Div.1988); *Plodzien v. Township of Edison Police Dep't,* 228 *N.J.Super.* 129, 134, 549 *A.2d* 59 (App.Div.1988); *Mahon v. Reilly's Radio Cabs, Inc.,* 212 *N.J.Super.* 28, 33–35, 513 *A.2d* 367 (App.Div.1986), *certif. denied,* 107 *N.J.* 79, 526 *A.2d* 159 (1987); *Ohio Cas. Group v. Aetna Cas. & Sur. Co.,* 213 *N.J.Super.* 283, 287–89, 517 *A.2d* 166 (App.Div. 1986); *Mangigian v. Franz Warner Assoc., Inc.,* 205 *N.J.Super.* 422, 427–28, 501 *A.2d* 179 (App.Div.1985); *Nebesne v. Crocetti,* 194 *N.J.Super.* 278, 281, 476 *A.2d* 858 (App.Div.1984). Citing these cases, respondent reasons that there is no coverage for petitioner's accident because it had "no control" over her while she drove home after completing her assigned task. It points to the fact that petitioner was free to deviate from her traveled course and thus it would be against the letter and spirit of the 1979 amendment to conclude that just because petitioner was guaranteed eight hours pay for only five hours of work her accident was covered. We disagree.

The cited cases which narrowly construe the definition of employment do not control the present circumstance. Many of the cases finding no compensability pertain to the "special-mission" exception. *See Mangigian,* 205 *N.J.Super.* at 427, 501 *A.2d* 179; *Ohio Cas. Group,* 213 *N.J.Super.* at 289–90, 517 *A.2d* 166. Others involve accidents occurring on parking lots or other properties not "controlled" by the employer. *Serrano,* 236 *N.J.Super.* at 220–21, 565 *A.2d* 417; *Manole,* 229 *N.J.Super.* at 143, 550 *A.2d* 1278; *but see Livingstone v. Abraham & Straus, Inc.,* 111 *N.J.* 89, 105, 543 *A.2d* 45 (1988).

In contrast, this case implicates neither the special-mission exception where "control" over the employee may be relevant, nor the concept of "control" over the accident site. Rather, it concerns the "travel-time" exception to *N.J.S.A.* 34:15–36, which provides simply that:

the employment of employee paid travel time by an employer for time spent traveling to and from a job site ... shall commence and terminate with the time spent traveling to and from a job site....

This exception affords portal-to-portal coverage for employees "paid for travel time to and from a distant job site." *Zelasko,* 128 *N.J.* at 336, 608 *A.*2d 231. It is rooted in the concept that the paid-for journey itself is part of the services provided by the employee. 1 Arthur Larson, *The Law of Workmen's Compensation,* § 16.21 (1990). "When the employee is paid an identifiable amount as compensation for time spent in a going or coming trip, the trip is within the course of employment." *Ibid.* *See also, Nebesne,* 194 *N.J.Super.* at 281, 476 *A.*2d 858 ("a traveling employee is not in the course of his employment and any accident does not arise out of that employment *unless the employee is receiving employment wages for the time thus spent traveling* "). (Emphasis added).

Often, such travel-time payment is made to induce the employee to accept employment at a distant location. *See Zenith National Ins. Co. v. Workmen's Compensation Appeals Board,* 66 *Cal.*2d 944, 59 *Cal.Rptr.* 622, 624–25, 428 *P.*2d 606, 608–09 (1967). The fact that the provision for the travel-time pay is "held out as an inducement to accept employment is a material factor supporting compensability." Larson, § 16.32. Of course, a common difficulty in such cases is whether the added compensation is indeed specially intended for travel time, or represents nothing more than additional remuneration having nothing to do with the employee's journey made on behalf of the employer. *Id.* at § 16.33.

■ This "common difficulty" is the factual issue Judge Lashman faced here. The question was whether petitioner was receiving an "identifiable amount as compensation" for travel time. Larson, § 16.21. Judge Lashman's finding that petitioner was actually being paid for "travel time" is supported by substantial credible evidence in the record as whole. *Close v. Kordulak Bros.,* 44 *N.J.* 589, 599, 210 *A.*2d 753 (1965). Petitioner and a co-worker testified that their arrangement with respondent was that in consideration for the use of their private vehicles they would be

paid as travel time the difference between the time they actually worked at the donor sites and eight hours. This testimony is supported by respondent's own written policy, as described by Bailey in his deposition testimony, to pay phlebotomists travel time as an incentive to make the daily journeys to the donor sites in their own vehicles if the trips exceeded one-half hour from their respective homes. Judge Lashman's rejection of respondent's assertion that this policy applied only to overtime pay is well founded in the record. Thus, the case is distinguishable from *Nebesne*, 194 *N.J.Super.* at 281, 476 *A*.2d 858, where we found no compensability because the employee was simply reimbursed for out-of-pocket travel expenses.

■ Respondent also argues that even if petitioner was receiving the travel-time pay, the exception under the statute applies only when the

> employee has a definite [work place], which is under the control of the employer, and, if at the request of the employer during normal business hours ... the [employee] must leave the conventional place of employment to go somewhere else on the employer's business or to a distant job site, then compensation is allowed.

Respondent's argument finds some support in the following language in *Mahon*, 212 *N.J.Super.* at 34, 513 *A*.2d 367:

> the travel time criterion is applicable only when the employee's injury is sustained *while going to and from a job site distant from the place of employment* and the employee is either paid for the time spent in so traveling or is transported in an employer authorized vehicle.
>
> [ (emphasis added).]

It may be argued that this interpretation of the "travel-time" exception renders the exception superfluous, since an employee who is traveling to or from his "place of employment" and an employer-designated "job site" would fall within the "special-mission" exception because he is required by his employer to be away from the conventional place of employment and is actually engaged in the direct performance of his employment duties.

*Zelasko,* 128 *N.J.* at 336, 608 *A.2d* 231.[2]

In any event, *Mahon*'s travel-time criterion presupposes a conventional place of employment. The statute simply requires paid-for travel time to and from a job site; there is no express condition that the travel be between a place of employment and a job site. Thus, we are convinced that when an employee has no conventional "place of employment," the Legislature intended to cover an employee when the parties' contract of employment provides, as an inducement for employment, for the payment of wages for travel to and from the employee's residence and the employer's job site. To hold otherwise would render a body of employees, paid for their travel time, without coverage simply because the nature of their work does not contemplate such a conventional place of employment. So long as the added remuneration is "identifiable" as travel time, Larson, § 16.21, the travel directly benefits the employer and the employee is traveling directly to or from his or her home and the designated job site, coverage should be afforded.

Petitioner falls within the travel-time exception. She has no conventional work place. She travels from her home in her own vehicle to various donor sites selected daily by respondent. Travel is thus an essential component of her services upon which respondent relies and derives a direct benefit. Judge Lashman found that respondent recognized this benefit by agreeing to pay petitioner an identifiable amount of compensation, $8 per hour, for the travel time as reflected in both the eight-hour guaranteed payment and respondent's policy to pay the phlebotomists for travel time beyond one-half hour from their respective residences. Accepting Judge Lashman's factual findings, we conclude that petitioner's accident, which occurred while she was proceeding directly home, arose out of and in the course of her employment.

Affirmed.

---

2 It should be noted that in *Mahon,* the paid travel-time exception did not apply in part because the employee was simply provided free transportation rather than wages for the travel time. 212 *N.J.Super.* at 34–35, 513 *A.2d* 367.