236 N.J. Super. 216 (1989)
565 A.2d 417
HECTOR SERRANO, PETITIONER-RESPONDENT,
v.
APPLE CONTAINER, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 3, 1989.
Decided October 19, 1989.
*217 Before PRESSLER, GRUCCIO and LANDAU, JJ.
Richard J. Riordan argued the cause for appellant (Thomas H. Green, attorney; Richard J. Riordan on the brief).
Joseph S. Accardi argued the cause for respondent (Litvak & Accardi, attorneys; Joseph S. Accardi on the brief).
The opinion of the court was delivered by LANDAU, J.A.D.
This is an appeal by respondent-appellant Apple Container from a final determination of the Division of Worker's Compensation which awarded benefits to petitioner-respondent Hector Serrano for injuries sustained in a motorcycle accident. The accident occurred after Serrano had punched out on the company time clock and departed from the designated parking area immediately adjacent to the building occupied solely by Apple.
An agreement of lease, originally entered into between the landlord, Crow Montville Associates, and Apple's predecessor, was in effect at the time. It provides, in pertinent part:
ARTICLE 1. DEMISED PREMISES:
LANDLORD, in consideration of the rents to be paid and the covenants and agreements to be performed by TENANT, hereby demises and leases unto TENANT, and TENANT hereby hires from LANDLORD the following described portion of Building A and other improvements situate [sic] on the property known as Montville Center III, Section 2 located at 60 Chapin Road in the Township of Montville, Morris County, New Jersey (said property being more particularly described in Schedule "A" attached hereto and hereby made part hereof):
(a) 137,194 sq. ft. in Building A, and
(b) the off-street truck loading areas adjacent thereto, and

*218 (c) FIFTY (50) off-street parking spaces (LANDLORD shall have the right to relocate parking spaces provided such relocated spaces are not substantially more remote from the portion of the building herein described)
all as shown outlined in red on the site plan attached hereto as Schedule "B", together with the right to use in common with LANDLORD's other tenants the driveways and walks giving access thereto.
As indicated in the lease, off-street truck loading areas and 50 off-street parking spaces are part of the demised premises and there is a common right to use access driveways and walks. Montville Center III, an industrial complex in which the demised premises are located, is contiguous to a similar complex known as Montville Center V. Their borders are not visibly distinguishable. Ownership of Montville Center III and Montville Center V is not congruent. Each is owned by a limited partnership which has some partners in common with the other.
Serrano had traveled approximately 325 yards from the premises leased to Apple and was "cutting through the adjacent complex" [Montville Center V] to reach Chapin Road, which affords peripheral access from the complex to Route 46, when he was struck by a vehicle as it pulled out of a parking space. There are a number of alternate internal roadways through the large industrial complex which can be utilized to reach Route 46 West. Serrano chose his path of egress from the complex to avoid operating his motorcycle over a rock strewn and bumpy section of Chapin Road.
It is not disputed that Apple did not dictate what means of egress he should use, nor that there were a number of alternate ways to leave the plant and the complex.
It is also undisputed that Serrano sustained injuries leading to amputation of his lower left leg, and various serious medical and psychological problems.
The sole issue on appeal is whether the judge of compensation properly determined that "Although the letter of Livingstone [Livingstone v. Abraham & Straus, Inc., 111 N.J. 89 (1988)] may not apply on all fours to the facts herein, the spirit of Livingstone compels the conclusion that this accident is *219 compensable." (parenthetical information added). It is evident that the compensation judge believed that the only factor distinguishing this case from Livingstone was the "happenstance of the choice of ways used by the petitioner to get to and from his assigned parking place." In short, he declined to make a differentiation between an accident occurring on the property of Montville III, and an accident occurring on the property owned by Montville V when no one could visibly distinguish boundaries. However, in focusing on the lack of physical distinctions between Montville Center III and Montville Center V, the opinion erroneously assumed that Serrano would not have been deemed to have left the employer's place of employment if he was anywhere within the parking fields or roadways of the Montville Center III complex.
We believe that this holding incorrectly interprets N.J.S.A. 34:15-36, and greatly overstates and extends the notion of control articulated in Livingstone.
The starting point for analysis must be the statute, N.J.S.A. 34:15-36, which as amended by L. 1979, c. 283, states in pertinent part:
Employment shall be deemed to commence when an employee arrives at the employer's place of employment to report for work and shall terminate when the employee leaves the employer's place of employment, excluding areas not under the control of the employer ...
In Livingstone, an accident occurred in a remote portion of a shopping center parking lot where the employer exercised de facto control by directing its employees where to park. The majority opinion aptly limited the issue:
The narrow question before us ... is whether an award of compensation benefits is precluded by virtue of the statutory bar on coverage for injuries occurring in "areas not under the control of the employer." Put another way ... we must decide whether the area of the mall lot where petitioner was directed to park can be considered as having been under the control of the appellant.... (emphasis added).
Id. at 103.
It was held that "[u]nder the circumstances of this case, the portion of the lot designated by Abraham & Strauss for its *220 employees' use was effectively equivalent to an employer-owned lot." (emphasis added). Id. at 104-05.
The Court recognized that, "In applying the term `control' to the facts of this case, the majority below correctly noted the importance of limiting judicially-created exceptions to the general noncompensability of off-premises accidents `in accordance with the clear legislative mandate of the 1979 amendments.'" Id. at 103 (quoting Livingstone v. Abraham & Straus, 216 N.J. Super. 685, 690 (App.Div. 1987)). It also recognized, however, that "the Legislature considered the pre-[1979] amendment parking-lot cases, awarding benefits for accidents in employer-owned and -provided lots, to be consistent with the `course of employment requirements.'" Id. at 104. Notably, the Livingstone holding deemed only that portion of the mall lot over which Abraham & Strauss exercised control to be an employer provided lot.
There is no parallel here with the facts in Livingstone. To begin with, unlike Abraham & Strauss, Apple had a specifically designated employees' parking lot which it leased from Crow Montville Associates. It was immediately adjacent to the plant where Serrano worked. This was the Apple employees' parking lot, not the entire complex. Unlike Abraham & Strauss, Apple exercised no control, in the sense considered in Livingstone, over any other portion of the Montville Center III complex, much less Montville Center V. It and its employees had only a "right to use in common with landlord's other tenants the driveways and walks giving access thereto." It did not purport to exceed this demise by any form of control. Neither did it impose any additional hazards upon Serrano as a requirement of employment. See Livingstone, 111 N.J. at 105, 106.
We conclude, much as we did in N.J. Mfrs. Ins. v. Public Service, 234 N.J. Super. 116, 120 (App.Div. 1989), and Manole v. Carvellas, 229 N.J. Super. 138, 143 (App.Div. 1988), that Serrano *221 "was beyond his employer's control in any relevant sense" when this accident occurred.
It is time to recognize that the "going and coming rule" has come and gone. It was not resurrected, as the opinion under review suggests, by the "spirit of Livingstone." To the contrary, both the majority[1] and minority[2] opinions in Livingstone recognized that the Legislature drafted the 1979 amendments to "establish[] relief from the far-reaching effect" of that rule.
Reversed.
NOTES
[1] Livingstone at 101, 106 n. 5.
[2] Livingstone at 108 (Clifford, J., dissenting).