753 A.2d 1045

SANDRA E. BROWER, PETITIONER–APPELLANT,
v. ICT GROUP, RESPONDENT–RESPONDENT.

Argued March 27, 2000—Decided July 13, 2000

*William A. Sheehan* argued the cause for appellant.

*Francis T. Giuliano* argued the cause for respondent (*Mattson & Madden*, attorneys; *LeRoy H. Mattson*, of counsel; *Michael J. Pasnik*, on the brief).

The opinion of the Court was delivered by

COLEMAN, J.

This workers' compensation case raises the issue of whether an employee, who has punched out at the end of the workday and falls while descending steps that lead from the street only to the injured worker's employer's offices in a multi-tenant office building, has sustained a compensable accident under the Workers' Compensation Act, *N.J.S.A.* 34:15–1 to –128 (Act). The Division of Workers' Compensation (Division) and the Appellate Division held that the accident is not compensable. We granted the worker's petition for certification, 162 *N.J.* 486, 744 *A.*2d 1208 (1999), and now reverse.

I.

The controlling facts were stipulated by the parties. Petitioner Sandra Brower, a forty-year-old telemarketer employed by respondent ICT Group, was injured on May 9, 1997 when she fell down concrete stairs within a two-story multi-tenant building. ICT Group was located on the second floor of the building, with three accesses to its leased premises. An elevator was centrally located in the front of the building and opened across from the

main entrance to ICT Group's offices. There was a front stairway accessory to the elevator. In addition, there was the back stairway on which petitioner fell.

The rear stairway opened only into ICT Group's leased premises and the basement, functioning much like a fire escape. It had an outside entrance on the ground level. It was a fully enclosed stairway with its top landing carpeted with the same floor covering as the inside of ICT Group's offices. There was a doorway that led directly from the top landing into ICT Group's premises. This rear stairway was used by ICT Group employees for ingress and egress to the offices and to take smoking breaks on the carpeted landing. ICT Group had no special requirements or prohibitions concerning which means of ingress and egress were used by employees. It had no customers or clients who visited the premises because it provided telemarketing services. The rear stairway and its top landing were cleaned by the landlord. The record does not inform us who cleaned ICT Group's offices. Employees frequently propped open the door to that stairway for easy access.

Petitioner sustained her accident after she had punched out on the time clock. After stepping through the ICT Group's doorway to the rear stairway, she fell from the top landing of the stairway.

The Judge of Compensation found that under both the "going and coming rule" and the "premises rule" the accident was not compensable. He reasoned that the 1979 amendments to the Act represented a legislative mandate to contain the costs of workers' compensation by limiting the judicially-created exceptions to the going and coming rule. He was of the view that the Legislature accomplished that purpose by specifically establishing a premises rule that defined when employment begins and ends. The Appellate Division, in an unpublished opinion, affirmed substantially for the reasons expressed by the Judge of Compensation.

## II.

Petitioner argues that the rear stairs were essentially part of her employer's leased premises and that her employer controlled

that stairway within the meaning of the Act. She maintains that the accident is compensable because she had not left her place of employment. The respondent, on the other hand, contends that based on the "premises rule" the accident is not compensable because petitioner had left her place of employment and the accident occurred in a place the employer did not control.

### A.

Only two years ago, we stated succinctly the overriding legal principles that inform our determination of whether the accident transpired on ICT Group's premises or whether it falls within the going and coming rule. We stated:

> The "going and coming rule" that existed in workers' compensation jurisprudence since the inception of the Act was abrogated by the 1979 amendments to the Act. L. 1979, c. 283, § 12. In its place, the Legislature established the premises rule. That was accomplished by defining for the first time when employment begins and ends. Pertinent to this case, the amendments provide: "Employment shall be deemed to commence when an employee arrives at the employer's place of employment to report for work and shall terminate when the employee leaves the employer's place of employment, excluding areas not under the control of the employer." N.J.S.A. 34:15-36.
>
> The premises rule is based on the notion that an injury to an employee that happens going to or coming from work arises out of and in the course of employment if the injury takes place on the employer's premises. Cressey v. Campus Chefs, Div. of CVI Serv., Inc., 204 N.J.Super. 337, 342–43, 498 A.2d 1274 (App.Div.1985). The premises rule "limits recovery to injuries which occur on the employer's premises ... by confining the term 'course of employment' to the physical limits of the employer's premises." Id. at 342, 498 A.2d 1274. Thus, unless one of the statutory exceptions not implicated here is triggered, an employee who is not physically on the employer's premises is not technically in the course of the employment. Livingstone v. Abraham & Straus, Inc., 111 N.J. 89, 96, 543 A.2d 45 (1988).
>
> The Legislature used the phrase "excluding areas not under the control of the employer" in its definition of employment because it intended to include areas controlled by the employer within the definition. That phrase was intended to make clear that the premises rule can entail more than the four walls of an office or plant.
>
> [Kristiansen v. Morgan, 153 N.J. 298, 316, 708 A.2d 1173 (1998), modified for other reasons, 158 N.J. 681, 730 A.2d 1289 (1999)].

The premises rule is important because "as a general rule we interpret the [Act] as not allowing compensation for

accidents occurring in areas outside of the employer's control." *Zelasko v. Refrigerated Food Express*, 128 *N.J.* 329, 336, 608 *A.*2d 231 (1992). The fact that petitioner had punched out on the time clock does not preclude compensability because the situs of the accident and the employer's control of that location are the dispositive factors. *See Kristiansen, supra,* 153 *N.J.* at 317, 708 *A.*2d 1173 (stating "an employee who punches out on the time clock at the [employer's] front entrance and is injured while walking through the plant to reach his or her car parked in a rear parking lot" sustains a compensable accident); *Cressey supra,* 204 *N.J.Super.* at 343, 498 *A.*2d 1274 (stating duties of maintenance do not indicate control). Thus, the premises rule determines whether petitioner's accident is compensable. The narrow issue is whether ICT Group controlled the stairway on which petitioner fell. Whether the employer leased that stairway is not a relevant consideration. 1 Arthur Larson, *The Law of Workmen's Compensation* § 15.43 (1990). The employer's conduct regarding the situs of the accident, however, is an important consideration in determining control. *See generally Ramos v. M & F Fashions, Inc.,* 154 *N.J.* 583, 591–93, 713 *A.*2d 486 (1998) (analyzing employer's conduct regarding a freight elevator in determining whether employer exercised control).

## B.

The meaning of "control" under the Act is more expansive than under formal property law concepts. *Ramos, supra,* 154 *N.J.* at 592, 713 *A.*2d 486; *Livingstone, supra,* 111 *N.J.* at 105, 543 *A.*2d 45; *Ehrlich v. Strawbridge & Clothier,* 260 *N.J.Super.* 89, 92, 615 *A.*2d 286 (App.Div.1992), *certif. denied,* 133 *N.J.* 435, 627 *A.*2d 1141 (1993). The phrase in *N.J.S.A.* 34:15–36, "excluding areas not under the control of the employer," "does not relate to concepts of exclusive control or duties of maintenance." *Cressey, supra,* 204 *N.J.Super.* at 343, 498 *A.*2d 1274. Indeed, that statute uses no adjective to modify "control." It is well-established in workers' compensation jurisprudence that when compensability of

an accident depends on control of the employer, that test is satisfied if the employer has the right of control; it is not necessary to establish that the employer actually exercised that right. *Mahoney v. Nitroform Co.,* 20 *N.J.* 499, 506, 120 *A.*2d 454 (1956); *Kertesz v. Korsh,* 296 *N.J.Super.* 146, 153, 686 *A.*2d 368 (App.Div.1996); *Pollack v. Pino's Formal Wear & Tailoring,* 253 *N.J.Super.* 397, 408, 601 *A.*2d 1190 (App.Div.), *certif. denied,* 130 *N.J.* 6, 611 *A.*2d 646 (1992); *Brower v. Rossmy,* 63 *N.J.Super.* 395, 405, 164 *A.*2d 754 (App.Div.1960), *certif. denied,* 34 *N.J.* 65, 167 *A.*2d 54 (1961); 1B Arthur Larson, *The Law of Workmen's Compensation* § 44.10 (1993). In *Ramos, supra,* we concluded that where the employer has the right to control its employees' use of property for ingress or egress to its place of employment, and an accident occurs on that property, the accident is compensable. 154 *N.J.* at 593–94, 713 *A.*2d 486. The foregoing principles are consistent with the social policy of liberally construing the Act to implement the legislative policy of affording coverage to as many workers as possible. *Saunderlin v. E.I. DuPont Co.,* 102 *N.J.* 402, 419, 508 *A.*2d 1095 (1986).

## C.

Based on our consideration of the undisputed facts, such as the physical location and layout of the stairway, and the controlling legal principles and social policies advanced by the Act, we conclude that the accident is compensable. The undisputed facts reveal that ICT Group knew or should have known that its employees used the back stairway for ingress and egress and for smoking breaks. The stairway ended at an entrance to respondent's premises and none of its customers or clients visited the premises. Given its knowledge and its failure to take any action disapproving its employees' use of that stairway, respondent ratified its employees' use of that stairway for ingress and egress. That is so because, although it is clear that ICT Group had the capacity to deny use by its employees, it chose not to, likely because it was perceived that business purposes would not be

advanced or compromised thereby since no customers or clientele visited the premises.

Furthermore, the physical layout and location of the rear stairway prevents it from being considered a common area. It is tantamount to a private staircase used exclusively by ICT Group's employees. That is its only purpose. Hence, this case involves an accident that occurred within the physical premises of ICT Group and cases involving off-premises accidents or common areas are not controlling. *See, e.g., Novis v. Rosenbluth Travel,* 138 *N.J.* 92, 93, 649 *A.*2d 69 (1994) (involving fall "while walking across the only sidewalk leading from an office-building parking lot to the entrance of the office building in which [petitioner's] employer's branch office was located"); *Livingstone, supra,* 111 *N.J.* at 91, 543 *A.*2d 45 (involving a petitioner who was struck by a motor vehicle while walking to her employer's place of business after parking in employer-designated parking area of a mall parking lot); *Ehrlich, supra,* 260 *N.J.Super.* at 90, 615 *A.*2d 286 (involving a petitioner who fell on a public sidewalk after exiting a door leading from employer's premises to sidewalk).

■ Consistent with the policy of liberally interpreting the Act to favor employees, *Close v. Kordulak Bros.,* 44 *N.J.* 589, 604, 210 *A.*2d 753 (1965), and because an employee, "as part of [his or her] employment, [is entitled to] safe egress from the premises," *Cressey, supra,* 204 *N.J.Super.* at 344, 498 *A.*2d 1274, the accident that befell petitioner is compensable.

### III.

We reverse the judgment of the Appellate Division and remand the matter to the Division for further proceedings.

VERNIERO, J., dissenting.

The Court finds in favor of compensability, based on its conclusion that the stairway on which the injury occurred was tantamount to a private staircase, thereby making the area part of the

employer's premises in satisfaction of the test required under the workers' compensation statute. I hold a contrary view. I believe that in the absence of the employer's business use or ownership of the stairway, an employee's idiosyncratic use does not support a finding that the stairway is an extension of the employer's premises. Further, in my view, an employer does not "control" a stairwell merely because the employer refrains from taking action to disapprove an employee's individual and selective use of that area. The plain words of the statute, prior case law, and public policy require that we affirm the Appellate Division. Therefore, I respectfully dissent.

## I.

The majority has stated the salient facts. I emphasize the following. Petitioner's injury occurred in a stairway that was not owned or leased by the employer; not required to be maintained by the employer; not designated by the employer to be used by the employees; not used by the employer in furtherance of its business; not providing any special benefit to the employer; not the exclusive means of ingress or egress to or from the employer's premises; not restricted to the exclusive use of the employees; and not posing any special hazard.

Specifically, the judge of compensation found that the stairway on which petitioner was injured, one of three means of ingress and egress, "was not owned, leased, maintained, controlled, *nor used* . . . at all by the employer in its telemarketing business." Besides leading to a balcony outside of the employer's premises, the stairway also provided access to the building's basement. The employer had no requirements concerning which of the three means of egress were to be used by the employees. The compensation judge found as well that as a telemarketing business, the employer had no customers who might have used the stairway. The judge also found that "[t]he employees' use of the rear stairway furnished no benefit to the employer," and the stairway "provided no inherent danger to the employees greater than that

to which the general public [was] exposed in using any public stairway."

Notably, the compensation judge did *not* find that the stairway was used "exclusively" by the employees of petitioner's employer. Further, although many of the facts were stipulated by the parties, there was no stipulation that the employer knew that employees used the stairway for ingress or egress, that the employees took cigarette breaks on the stairway, or that the employees propped open the door leading to the stairway. None of those facts appears in the compensation judge's findings, apart from recounting petitioner's allegations.

We are bound by the factual findings of the compensation judge. *Reinhart v. E.I. DuPont De Nemours,* 147 *N.J.* 156, 163–64, 685 *A.*2d 1301 (1996); *Manzo v. Amalgamated Indus. Union Local 76B,* 241 *N.J.Super.* 604, 609, 575 *A.*2d 903 (App.Div.), *certif. denied,* 122 *N.J.* 372, 585 *A.*2d 379 (1990).

## II.

As amended in 1979, the Workers' Compensation Act (Act) provides that employment "shall terminate when the employee leaves the employer's place of employment, *excluding areas not under the control of the employer . . . .*" *N.J.S.A.* 34:15–36 (emphasis added) (hereafter sometimes referred to as "the 1979 amendment"). The judicial backdrop to the 1979 amendment is critical to understanding how the present case should be resolved. Although this Court has previously provided an extensive narrative of that history, *Livingstone v. Abraham & Straus, Inc.,* 111 *N.J.* 89, 95–103, 543 *A.*2d 45 (1988), it is useful to recount the history here. Unlike many of the statutes we are called on to interpret, *N.J.S.A.* 34:15–36 comes to us with a wealth of judicial and legislative history, which aids us in discerning the legislative intent.

### A. *Background to the 1979 Amendment*

On April 4, 1911, Governor Woodrow Wilson signed New Jersey's first workers' compensation law. Hon. Fred H. Kumpf,

*Occupational Disease Claims Under the Workers' Compensation Reforms,* 12 *Seton Hall L.Rev.* 470, 470 n. 2 (1982). The law represents carefully balanced tradeoffs between employees, employers, and insurers. Price V. Fishback & Shawn Everett Kantor, *The Adoption of Workers' Compensation in the United States, 1900–1930,* 41 *J.L. & Econ.* 305 (Oct.1998). Moreover, the law is designed to place the foreseeable cost of accidents on the employer who can easily factor it as an expense of doing business. *Livingstone, supra,* 111 *N.J.* at 94–95, 543 *A.*2d 45; Fishback & Kantor, *supra,* 41 *J.L. & Econ.* at 309–10. This Court long ago noted that the law "is designed to place the cost of accidental injuries which are work-related upon the employer who can make these funds available out of his operating expenses," and that "this legislative goal must always be kept in mind when considering factual patterns presented." *Hammond v. The Great Atl. & Pac. Tea Co.,* 56 *N.J.* 7, 14, 264 *A.*2d 204 (1970). Implicit in the Act is the realization that when employers and insurers can foresee and calculate their costs, they will pass some or all of those costs on to their consumers. *Wyatt v. Metropolitan Maintenance Co.,* 74 *N.J.* 167, 174, 376 *A.*2d 1222 (1977) (Schreiber, J., dissenting) ("The economic reality is that consumers will probably be called upon to pay in whole or in part for the employer's operating expenses.").

That cost-shifting purpose is why, prior to the 1979 amendment, we focused not on whether the *employer* ought to be held responsible, but rather, "whether the cost of a particular accident is one that should be imposed upon the *consuming public* as an appropriate production expense." *Wyatt, supra,* 74 *N.J.* at 174, 376 *A.*2d 1222 (Schreiber, J., dissenting) (emphasis added). "Put another way, [compensability should be resolved by asking] is the cost of that accident reasonably includable in the price to be charged for the employer's product or service?" *Id.* at 173, 376 *A.*2d 1222 (Schreiber, J., dissenting). If the cost to employers is unanticipated or becomes excessive, those employers may be forced to reduce their workforce or otherwise compensate for their

losses at the expense of their employees. *Id.* at 175, 376 *A.2d* 1222 (Schreiber, J., dissenting).

Consistent with that cost-shifting rationale and with certain exceptions not relevant to this appeal, the Act covered accidents "arising out of and in the course of employment." *N.J.S.A.* 34:15-7 (as enacted by *L.* 1911, *c.* 95, § 7). Courts in New Jersey and across the country construed that and similar language to mean that coverage should be provided only for accidents occurring on the employer's premises, leading Professor Larson to designate the popular restriction as the "premises rule." 1 Arthur Larson, *The Law of Workmen's Compensation,* § 15.10 (1990). Under that rule, "[t]he line between compensability and noncompensability ... is very strict. Under th[e premises] rule unless an employee is within the physical confines of the premises when an injury occurs, it is noncompensable." *Cressey v. Campus Chefs, Div. of CVI Serv.,* 204 *N.J.Super.* 337, 344, 498 *A.2d* 1274 (App. Div.1985) (citation omitted).

The premises rule had and continues to have two important justifications. First, by restricting coverage to only those accidents that occur on the employer's premises, employers and insurers gain certainty concerning the expected cost of accidents. Because they know the unique hazards presented by their industry, employers are able to incorporate those costs as operating expenses. *Livingstone, supra,* 111 *N.J.* at 94–95, 543 *A.2d* 45; *Hammond, supra,* 56 *N.J.* at 14, 264 *A.2d* 204; *Wyatt, supra,* 74 *N.J.* at 176, 376 *A.2d* 1222 (Schreiber, J., dissenting); Fishback & Kantor, *supra,* 41 *J.L. & Econ.* at 309–10. If coverage of accidents was permitted for any accident occurring to an employee, not only would employers and insurers be unable to forecast their expected costs, but those costs also would become exorbitant. *Wyatt, supra,* 74 *N.J.* at 175, 376 *A.2d* 1222 (Schreiber, J., dissenting).

Second, restricting coverage to accidents occurring on the premises of the employer comports with a sense of fairness because employers should be responsible for the safety of their employees

when at work. "Since industry must carry the burdèn, there must then be some causal connection between the employment and the injury, or it must have had its origin in some risk incident to or connected with the employment, or have followed from it as a natural consequence." *Morris v. Hermann Forwarding Co.*, 18 *N.J.* 195, 198, 113 *A.*2d 513 (1955); *Bryant v. Fissell*, 84 *N.J.L.* 72, 76, 86 *A.* 458 (Sup.Ct.1913) (denying compensability unless risk was "reasonably incidental" to employment).

Because employers benefit from the work of their employees, we have rightly held employers responsible for accidents that befall those employees at the workplace. Thus, "[t]he touchstone for determining whether the accident arises in the course of employment is whether it arises out of work for which benefit accrues to the employer." *Zelasko v. Refrigerated Food Express*, 128 *N.J.* 329, 345, 608 *A.*2d 231 (1992) (Handler, J., dissenting). Conversely, requiring employer responsibility for any accident occurring to an employee, regardless of the time or place, is tantamount to asking employers to pay even for those accidents that are not the result of activities that benefit the employer or pose a unique hazard to the employee.

As a necessary corollary to the premises rule, "the courts developed the going and coming rule, which ordinarily precluded an award of compensation benefits for injuries sustained during routine travel to and from an employee's regular place of work." *Livingstone, supra*, 111 *N.J.* at 96, 543 *A.*2d 45 (internal quotation marks omitted). Despite some contrary usage, the going-and-coming rule refers to the presumed *lack* of compensability for injuries occurring while an employee was going from or coming to work. 1 Larson, *supra*, § 15.11. Like the premises rule from which it arose, the going-and-coming rule allows employers and insurers to predict their expected accident costs. The rule also insures fairness to employers because an employee's routine trip to and from work yields neither special benefit to the employer nor results in a special risk to the employee. *Ibid.; Morris,*

*supra,* 18 *N.J.* at 197–98, 113 *A.*2d 513.   The rule served the State and the entire country, and served us well, for over sixty years.

Starting about 1970, New Jersey began what has been described as an "abortive . . . ill-fated . . . experiment" of carving out exceptions to the premises rule.   1 Larson, *supra,* § 15.12(b), at 4–12.   The exceptions began with courts concluding that because travel to and from work "obviously is essential to the work itself," an injury occurring off the employer's premises was compensable. *Hammond, supra,* 56 *N.J.* at 13, 15, 264 *A.*2d 204.   Once begun, the exceptions had neither legal limit nor logical end.   An accident occurring on the highway many miles from work might be considered compensable.   So, too, might an injury occurring in the employee's home as the employee prepared to go to work.   Such preparation might have been viewed as essential to the work itself.

Thus, gradually but invariably, "[t]he basic going and coming rule . . . became diluted by a series of exceptions."   *Livingstone, supra,* 111 *N.J.* at 96, 543 *A.*2d 45.   Those numerous exceptions met with stern scholarly criticism.   *See* 1 Larson, *supra,* § 15.12. Professor Larson explained how a court can be led astray when comparing a case under consideration only to another isolated case, leading to incremental, but inevitable, extensions.   In Professor Larson's words, New Jersey's workers' compensation jurisprudence in the decade of the seventies serves as an example of "making law by measuring only the distance to the last precedent while completely losing sight of the essential principle involved in the rule."   1 Larson, *supra,* § 15.12(b), at 4–14.

Predictably, the judiciary's *de facto* abandonment of the premises rule had fiscal consequences.   The costs of workers' compensation insurance became substantial.   *Perez v. Pantasote, Inc.,* 95 *N.J.* 105, 112, 469 *A.*2d 22 (1984).   In just one year, 1976, insurance company underwriting losses for workers' compensation increased 160 percent.   *Wyatt, supra,* 74 *N.J.* at 175, 376 *A.*2d 1222 (Schreiber, J., dissenting) (citing Robert R. Heckman, Chairman of the Compensation Rating and Inspection Bureau of New Jersey).   By that same year, New Jersey ranked third highest in

the nation in cost of workers' compensation insurance. *Id.* at 175 n. 1, 376 *A.*2d 1222 (Schreiber, J., dissenting) (citing 2 *Governor's Econ. Recovery Comm'n Report* app., at C–52, D–65 (1976)). The costs became so high that some businesses "departed from this state and others [were] deterred from establishing plants here." *Id.* at 174, 376 *A.*2d 1222 (Schreiber, J., dissenting). New Jersey's competitive position *vis-a-vis* other states diminished and the high cost of workers' compensation insurance was seen as a significant cause of that weakened position. *Id.* at 175, 376 *A.*2d 1222 (Schreiber, J., dissenting).

Specifically, one cause of the skyrocketing costs was thought to be "the everbroadening scope of workers' compensation benefits applied by the courts in marginal cases." *Ibid.* (Schreiber, J., dissenting). Accordingly, a blue-ribbon panel, the Governor's Econ. Recovery Com'n, recommended that the Legislature amend the Workers' Compensation Act, "with the objective of becoming competitive with other states." *Ibid.* (Schreiber, J., dissenting) (citing 1 *Governor's Econ. Recovery Com'n Report* 43 (1976)). That recommendation would serve as the prelude to the 1979 amendment, and was thought to signal the end of New Jersey's failed experiment with improving upon the premises rule.

### B. *The 1979 Amendment*

In 1978, identical bills to amend the workers' compensation laws were introduced in the Senate and the General Assembly. Joint hearings of the Senate Labor, Industry and Professions Committee and the Assembly Labor Committee were held in April 1979, leading to the introduction in each house of identical substitute bills. *Perez v. Pantasote, supra,* 95 *N.J.* at 113, 469 *A.*2d 22. Identical amended versions of the bills were subsequently enacted by both houses, and Governor Brendan Byrne signed them into law on January 10, 1980. *N.J.S.A.* 34:15–36 (as amended by *L.* 1979, *c.* 283, § 12). Judge Alfred J. Napier, who was then Chief Judge of the Division of Workers' Compensation, noted that "[w]hile the basic pattern and objectives of our Workers' Compen-

sation Act remain unchanged, the total package result[ed] in major changes in benefit levels and philosophical attitudes towards certain injuries, accidents and defenses to claims." Hon. Alfred J. Napier, *Impact of the Reform Act of 1980*, 96 *N.J. Lawyer* 17, 17 (Summer 1981).

The Joint Statement of the Senate Labor, Industry and Professions Committee verified that the 1979 amendment was intended to provide "genuine reform and meaningful cost containment for New Jersey employers from unjustified workers' compensation costs that [were] presently among the highest in the nation." Senate Labor, Industry and Professions Committee, *Joint Statement to Senate Committee Substitute for Sen. No. 802 and Assembly Committee Substitute for Assem. No. 840*, at 1 (Nov. 13, 1979). The Committee specifically referred to its desire to abrogate the judicially-created exceptions to the going-and-coming rule, noting that the legislation would benefit employers by "establishing relief from the far-reaching effect of the 'Going and Coming Rule' decisions by defining and limiting the scope of employment. . . ." *Id.* at 2.

Commentators agreed at the time that the amended law was "intend[ed] not to cover a worker proceeding from the plant to the parking lot. . . ." Steven L. Lefelt, *Workers' Compensation in New Jersey: A Critique of S–802*, 104 *N.J.L.J.* 425, 434 (Nov. 15, 1979). The definition of "employment" was specifically "designed to remove from compensability certain cases heretofore held compensable where special hazards existed en route to the employer's premises. . . ." Napier, *supra*, 96 *N.J. Lawyer* at 18. Notably, Judge Napier expressed the view that the new law made noncompensable even those injuries caused by "special hazards." Soon after the Act was amended, Judge Napier characterized the statute as "sharply curtail[ing]" compensability in all off-premises accidents. *Ibid.*

Since the passage of the amendment, numerous decisions by this Court have recognized the Legislature's intent to return to a strict interpretation of the premises rule. We noted in *Living-*

*stone*, for example, that by formulating a new definition of employment, the Legislature was "[e]xpressing its disagreement with the judiciary's broad reading of the statutory criteria for coverage...." *Livingstone, supra,* 111 *N.J.* at 101, 543 *A.*2d 45. We also observed "the importance of limiting judicially-created exceptions to the general noncompensability of off-premises accidents in accordance with the clear legislative mandate of the 1979 amendments." *Id.* at 103, 543 *A.*2d 45 (internal quotation marks omitted). More recently, we observed that the legislative adoption of the premises rule was "designed to overcome the expansive exceptions to its application that occurred under the going-and-coming rule." *Ramos v. M & F Fashions, Inc.,* 154 *N.J.* 583, 591, 713 *A.*2d 486 (1998). Similarly, Justice Handler noted that the Legislature "rejected many of the exceptions that had come to qualify and limit the effect of the rule." *Zelasko, supra,* 128 *N.J.* at 342, 608 *A.*2d 231 (Handler, J., dissenting).

The Appellate Division also has had numerous occasions to note the Legislature's intent to return to a strict interpretation of the premises rule. *See, e.g., Ward v. Davidowitz,* 191 *N.J.Super.* 518, 522, 468 *A.*2d 250 (App.Div.1983) ("It follows that the ... Legislature intended employers to receive ... not relief from the 'going and coming rule,' but rather from the numerous exceptions which have evolved to that rule."); *Cressey, supra,* 204 *N.J.Super.* at 342, 498 *A.*2d 1274 (noting that "[t]he Legislature sought to reinstate the vitality of the premises rule"); *Brown v. American Red Cross,* 272 *N.J.Super.* 173, 177, 639 *A.*2d 407 (App.Div.1994) ("It has been repeatedly held that the 1979 amendment was intended to sharply curtail compensation for off-premises accidents....").

In sum, the judicial and legislative history of the 1979 amendment is unequivocal. The Legislature responded to the expansive judicial decisions broadening the scope of compensable accidents by superseding those decisions with a firm mandate to disallow coverage for accidents occurring outside of the employer's premises. The statute now plainly states that employment terminates

"when the employee leaves the employer's place of employment...." *N.J.S.A.* 34:15–36. The subsequent phrase, "excluding areas not under the control of the employer," is meant to limit, not expand, upon that basic definition.

## III.

### A. *Statutory Analysis*

In view of the legislative and judicial backdrop outlined above, I conclude that the purpose of the 1979 amendment was to deny compensability for injuries like those sustained by petitioner, *i.e.*, injuries occurring outside the confines of the employer's offices in an area not being used in the employer's business and outside of the employer's control. It bears repeating that petitioner's injury occurred in a stairway that was not owned, leased, or controlled by the employer. Again, we are bound by the findings of the compensation judge, who determined:

In this case before me, based on the available facts, I find as fact that:

1. Petitioner had "clocked out" prior to her fall.

2. The rear stairway was not owned, leased, maintained, controlled, *nor used* ... at all by the employer in its telemarketing business.

3. There were a common front elevator and a front stairway available for petitioner's ingress and egress to and from work.

4. The employees' use of the rear stairway furnished no benefit to the employer.

5. The rear stairway provided no inherent danger to the employees greater than that to which the general public [was] exposed in using any public stairway.

6. A fall entering or exiting work is not a risk inherent in petitioner's employment, can occur anywhere or anytime, and New Jersey's "but for employment" risk is totally inapplicable here.

7. The employer's business, being telemarketing, had no customers whatever entering or exiting the premises, and the common elevator and stairs in the front of the building, opening at the entrance to respondent's leased premises, were therefore not unduly burdensome for its employees' use.

Unlike the majority, I believe that those factual findings are insufficient for the Court to conclude that the stairway was part of the employer's premises. In my view, if we are to draw any inference from the facts, it is that petitioner's injury occurred in

the part of the building resembling a public or common area. That inference is consistent with the judge's specific finding that, "[t]he rear stairway provided no inherent danger to the employees greater than that to which the general public [was] exposed *in using any public stairway.*" (Emphasis added). Within the context of all other facts, the judge's reference to "any public stairway" belies the notion that petitioner was injured in a private area of the employer's premises.

Professor Larson does observe as a general rule, that "[w]hen the place of employment is a building, it is not necessary that the employer own or lease the place where the injury occurred. It is sufficient if he has some kind of right of passage, as in the case of common stairs, elevators, lobbies, vestibules, concourses, hallways, walkways, ramps, footbridges, driveways, or passage ways through which the employer has something equivalent to an easement." 1 Larson, *supra,* § 15.43, at 4–132 to 4–136. However, the Professor also notes that New Jersey's statutory adoption of the premises rule means that it does not necessarily follow the general rule of compensability. More particularly, Professor Larson indicates that New Jersey "introduces elements into the rule which could in particular cases produce results different from those generally worked out by courts when unrestricted by detailed statutory tests." 1 Larson, *supra,* § 15.11, at 4–5 n. 2. In my view, the general rule cited by Professor Larson does not apply to this appeal in light of the 1979 amendment.

I am persuaded by the extensive legislative history that an employee's individual use of a stairway, which is not part of the employer's leased premises or otherwise controlled by the employer, is not sufficient to support a finding of compensability. The statute is "intended to exclude areas which are not physically part of the employer's premises." *Cressey, supra,* 204 *N.J.Super.* at 343, 498 *A.*2d 1274. "Whatever the law used to be ... [,] it is no longer enough ... that the accident occurred in an area in reasonable proximity to the employer's place of business." *Liv-*

*ingstone, supra,* 111 *N.J.* at 108, 543 *A.*2d 45 (Clifford, J., dissenting).

## B. *Case Law*

In my view, the Court's holding is not easily harmonized with prior case law. To the contrary, I interpret the relevant cases to compel judgment in favor of respondent. My perception of the facts leads me to conclude that this case is in line with those decisions in which compensation was denied under a strict but required reading of the statute.

*Livingstone* was the first case in which we examined the import of the 1979 amendment defining employment. *Livingstone, supra,* 111 *N.J.* at 90, 543 *A.*2d 45. In that case, the employer (Abraham & Straus, or A. & S.) was a tenant in a shopping mall. *Id.* at 91, 543 *A.*2d 45. No part of the mall's parking lot was owned, leased, or maintained by A. & S. *Ibid.* A. & S. employees, however, had been directed to park in a certain far corner of the lot in order to preserve the closer parking spaces for A. & S. customers. *Ibid.* Customers rarely if ever parked in the spots designated for the employees. *Id.* at 91–92, 543 *A.*2d 45. We held that an injury occurring to the employee as she proceeded from her car to the A. & S. store was compensable because A. & S. had exercised control over the section of the parking lot in which the employee had been directed to park. *Id.* at 106, 543 *A.*2d 45.

Our holding in *Livingstone* was based on several factors, none of which is present in this case. First, we relied heavily on the fact that the employee "parked in a far corner of the mall parking lot, where all Abraham & Straus employees *had been directed to park.*" *Id.* at 91, 543 *A.*2d 45 (emphasis added). We found it relevant that the employees had received a written directive on the matter. *Ibid.* Second, we noted that "[t]he undisputed purpose of the parking directive was to ensure that the closer, more convenient parking spaces remained available for [A. & S.'s] customers, and thus was entirely for its benefit." *Ibid.* Third, we found it highly significant that the employer "had the power to designate an otherwise under-used area of the shopping center

parking lot for use by its employees." *Id.* at 104, 543 *A.*2d 45. Under those circumstances, we found that "the portion of the lot designated by Abraham & Straus for its employees' use was effectively equivalent to an employer-owned lot." *Id.* at 104–05, 543 *A.*2d 45. Fourth, we found that "by requiring its employees to park in a distant section of the lot, in order that customers could enjoy the convenience of parking adjacent to [the store], [A. & S.] caused its employees to be exposed to an added hazard, on a daily basis, in order to enhance its business interests." *Id.* at 105–06, 543 *A.*2d 45.

The appellate courts applying the *Livingstone* holding have recognized repeatedly and consistently the self-limitations of that holding. *See Ehrlich v. Strawbridge & Clothier,* 260 *N.J.Super.* 89, 90, 615 *A.*2d 286 (App.Div.1992) (finding employer control where employee used exit "designated by" employer for "the exclusive use of its employees"), *certif. denied,* 133 *N.J.* 435, 627 *A.*2d 1141 (1993); *Serrano v. Apple Container,* 236 *N.J.Super.* 216, 218, 565 *A.*2d 417 (App.Div.1989) (finding no employer control when it was "not disputed that [employer] did not dictate what means of egress [employee] should use, nor that there were a number of alternate ways to leave the plant and the complex"), *certif. denied,* 121 *N.J.* 591, 583 *A.*2d 298 (1990); *New Jersey Mfrs. Ins. Co. v. Public Serv. Elec. & Gas Co.,* 234 *N.J.Super.* 116, 118–19, 560 *A.*2d 117 (App.Div.1989) (describing *Livingstone* as finding employer control by virtue of employer's "power to designate an otherwise under-used area of the parking lot for use by its employees"); *Manole v. Carvellas,* 229 *N.J.Super.* 138, 142, 550 *A.*2d 1278 (App.Div.1988) (describing *Livingstone* as finding employer control of common areas when the employer had "designated a section of the common area for its employees").

In a pre-*Livingstone* case, *Cressey, supra,* 204 *N.J.Super.* at 343–44, 498 *A.*2d 1274, the Appellate Division allowed compensation for an injury occurring on a loading dock adjacent to the employer's premises. The employee, "[i]n order to leave her work place ... was required to use a rear door which led to a loading

dock and proceed from there to one of the nearby parking lots...." *Id.* at 340, 498 *A.2d* 1274. It was "undisputed that this was the only egress permitted" to the employees. *Id.* at 341, 498 *A.2d* 1274. Steps leading down from the loading dock became impassable due to flooding, and that condition required the employees to step from the loading dock to a retaining wall, move around the corner of the building, and then step down. *Id.* at 340, 498 *A.2d* 1274. That hazardous egress was made even more dangerous by inadequate lighting. *Id.* at 341, 498 *A.2d* 1274. The employee in *Cressey* was injured as she undertook that acrobatic exit. *Ibid.*

Recognizing that the legislative history of the 1979 amendment indicated that the Legislature "sought to reinstate the vitality of the premises rule," and that the premises rule denied compensability "unless an employee is within the physical confines of the premises," the Appellate Division held the injury compensable. *Id.* at 342, 344, 498 *A.2d* 1274. The court was convinced that an exception to the premises rule was justified when "special hazards" lie on the "only route that the employee can traverse." *Id.* at 344, 498 *A.2d* 1274. The panel explained its holding by noting that an employee has a right to obtain safe egress from the premises. *Ibid.*

Applying *Cressey* 's rationale would not require compensation for petitioner's injury in the present case. Petitioner was not required to exit by the stairway on which she was injured, nor was that stairway the only means of egress from the building. More fundamentally, the stairway on which petitioner was injured is noticeably unlike the treacherous exit required in *Cressey;* petitioner's stairway posed no unique or added hazard.

Several of the post-*Livingstone* cases decided by the Appellate Division compel affirming the Appellate Division in this case. In *New Jersey Manufacturers Insurance Company,* an employee was injured while on an access road owned by his employer. *New Jersey Mfrs. Ins. Co., supra,* 234 *N.J.Super.* at 117, 560 *A.2d* 117. The road was accessible to the general public as well. *Ibid.*

Although the road was owned by the employer, the Appellate Division agreed that the accident was non-compensable because the road created no "added hazard, created to enhance the business interests" of the employer. *Id.* at 119, 560 *A.*2d 117. The court specifically rejected the rationale that the injury was compensable because it occurred on a road which was "the only route available." *Id.* at 121, 560 *A.*2d 117. The court concluded that because the general public also used the road, "there is no indication that [the employer] exercised any control over its use." *Id.* at 119, 560 *A.*2d 117.

The same reasoning applies to petitioner's claim. The stairway on which she was injured was accessible to the general public. The stairway created no enhanced hazard, nor was its use an enhancement of the employer's business interests. Petitioner was injured on a stairway that was *not* the only route of egress, making her claim even weaker than the one in *New Jersey Manufacturers.* Finally, unlike the road in *New Jersey Manufacturers,* the stairway in this case was neither owned nor controlled by the employer.

In *Serrano,* after clocking out from work, an employee was injured as he rode his motorcycle through a parking lot adjacent to the one designated by his employer for employee use. *Serrano, supra,* 236 *N.J.Super.* at 218, 565 *A.*2d 417. In finding for the claimant, the compensation judge held the injury compensable because he considered it unjust that the employee be denied recovery simply because the employee had made the ill-fated choice to exit through a public lot instead of the employer-designated lot. *Id.* at 218–19, 565 *A.*2d 417. In the judge's words, "[a]lthough the letter of *Livingstone* may not apply on all fours to the facts herein, the spirit of *Livingstone* compels the conclusion that this accident is compensable." *Ibid.* (citation omitted).

The Appellate Division unanimously disagreed. The panel found that the accident was not compensable because it occurred in a public area that was not controlled by the employer. *Id.* at 220, 565 *A.*2d 417. Unlike *Livingstone,* the parking lot in which

the accident occurred was not one in which the employee had been directed to use, nor did it pose any added or special hazard to the employee. *Ibid.* The panel concluded by remarking that "[i]t is time to recognize that the 'going and coming rule' has come and gone. It was not resurrected ... by the 'spirit of *Livingstone.*' " *Id.* at 221, 565 *A.*2d 417.

Petitioner's case is analogous to *Serrano* in that the injury occurred in an area, accessible to the public, that the employer had not directed the employees to use. Further, in both *Serrano* and petitioner's case, the area in which the accident occurred did not pose any added or special hazard. Finally, petitioner's case is similar to *Serrano* in that there are multiple paths of egress from the employer's premises, which should militate against a finding of compensability. *Id.* at 218, 565 *A.*2d 417.

Nor does *Ehrlich,* which provides one of the more expansive readings of *Livingstone,* compel today's result. In *Ehrlich,* as here, the employee clocked out and exited through a door which led to a stairway. 260 *N.J.Super.* at 90, 615 *A.*2d 286. The employee descended the stairway and began walking down the sidewalk when she slipped and was injured. *Ibid.* The Appellate Division found the injury compensable, relying on *Livingstone.* *Id.* at 92, 543 *A.*2d 45.

Significantly, however, the door and stairway used by the employee in *Ehrlich* were "designated by" the employer "for the exclusive use of its employees." *Id.* at 90, 615 *A.*2d 286. The panel emphasized that the employees "were required to use [that] entrance when entering or leaving the premises." *Ibid.* Thus, at the very least, *Ehrlich* read *Livingstone* to be limited to situations in which the employer directed the employee to traverse the route on which the employee was injured. Petitioner's injury transcends even those most basic limitations of *Livingstone,* as the stairway on which she was injured was not the one "designated by" her employer, and was not commandeered for "the exclusive use of its employees." *Ibid.*

In another case, *Novis v. Rosenbluth Travel*, 138 *N.J.* 92, 649 *A.2d* 69 (1994), a unanimous Court denied compensation to an employee who was required to report to a branch office of her employer, and who "sustained injuries while walking across the only sidewalk leading from an office-building parking lot to the entrance of the office building in which her employer's branch office was located." *Novis, supra*, 138 *N.J.* at 93, 649 *A.2d* 69. We acknowledged that the sidewalk on which the employee was injured provided the sole access to the building. *Ibid.* The employer, then, necessarily knew that its employees used the sidewalk and sanctioned that use; yet, the Court denied compensability, contrary to the majority's holding here.

We described at length why the facts in *Novis* were distinguishable from those in *Livingstone;* in so doing, we were emphatic about the limitations inherent in *Livingstone*'s holding. In the Court's words,

[t]he facts in *Livingstone* differ significantly from those that control the outcome of this appeal. Abraham & Straus, the employer in *Livingstone*, had directed its employees to park at the outermost edge of the shopping-mall parking lot. . . . The directive was intended to assure that the more convenient parking spaces in the mall were reserved for customers of Abraham & Straus, and the undisputed testimony demonstrated that customers rarely, if ever, had sought access to the remote parking spaces designated for Abraham & Straus employees. In that specific context, we concluded that Abraham & Straus's appropriation of the designated area of the mall lot for its employees' use was the essential equivalent of control[.]

[*Id.* at 95, 543 *A.2d* 45.]

We proceeded to highlight those facts from *Livingstone* deemed to be of central importance: that the employer had designated a specific common area for its employees' use, that no one but the employees used the area, that the use of the area posed an added hazard to the employees, and that the employer gained a particular business advantage from its employees' use of the area. *Id.* at 95–96, 543 *A.2d* 45. We rejected the suggestion that mere use of the area by an employee equated with control. Rather, we denied compensability because the employer "exercised no control over" the area where the injury occurred, and because the employer

"simply shared the [area] with the other tenants[.]" *Id.* at 96, 543 *A.*2d 45.

Petitioner's case is analogous to *Novis.* The stairway on which petitioner was injured led to the basement of the building as well as to a balcony outside of her employer's premises, and the employer exercised no control over that staircase. In *Novis,* we described the fact that others shared access to the common area as "vastly different from the specific facts that influenced our holding in *Livingstone.*" *Ibid.*

Moreover, unlike the present case in which petitioner was injured on one of several routes of egress from the premises, the employee in *Novis* was injured while on the sole route into her employer's premises; even so, we denied compensability. *Id.* at 93, 649 *A.*2d 69. Here, because petitioner was not required to use the stairway, and her use of the stairway presented neither a special hazard nor provided a special benefit to the employer, petitioner's injury is not compensable under *Livingstone* or *Novis.*

The next case in which we applied *N.J.S.A.* 34:15–36 was *Kristiansen v. Morgan,* 153 *N.J.* 298, 316, 708 *A.*2d 1173 (1998), *modified,* 158 *N.J.* 681, 730 *A.*2d 1289 (1999). The employee in that case was a bridge operator employed by the New Jersey Department of Transportation. *Id.* at 302, 708 *A.*2d 1173. After working on the bridge at night, the employee had to cross over several lanes of traffic to reach a stairway descending to where his car was parked. *Id.* at 303, 708 *A.*2d 1173. The employee was killed when he was hit by a car and the Court was called on to determine whether the accident was compensable under the Act.

We found the accident compensable because the employer "owned, maintained, and controlled the bridge where decedent worked and was fatally injured." *Id.* at 317, 708 *A.*2d 1173. The unanimous Court noted that our case law had established that employer control exists "when the employer owns, maintains, or has exclusive use of the property." *Ibid.* In the present case, petitioner's employer did not own, lease, maintain, or have exclusive use of the stairway on which petitioner was injured. Because

"an employee who is not physically on the employer's premises is not technically in the course of the employment," petitioner's injury is non-compensable under *Kristiansen*. *Id.* at 316, 708 *A.*2d 1173.

*Ramos, supra,* contains our most recent explication of the meaning of "control" in the workers' compensation setting. In that case, we held compensable an injury sustained by a worker in a freight elevator. *Ramos, supra,* 154 *N.J.* at 593–94, 713 *A.*2d 486. The employer leased space on the fourth floor of a building, and the employee was attempting to use the elevator to ascend to those premises when he was injured. *Id.* at 587–88, 713 *A.*2d 486. During the workday, the elevator regularly was used by the employer to transport materials between its fourth-floor tenancy and the ground floor. *Id.* at 592, 713 *A.*2d 486. Citing *Livingstone, Ehrlich,* and *Cressey,* we held that because the employer used the elevator for conducting business, the employer could be said to have exercised control over it. *Ibid.*

*Ramos* does not require recovery for petitioner here; instead, it requires that we affirm the courts below. Unlike petitioner's employer, the employer in *Ramos* regularly used the elevator in conducting its daily business. Petitioner's employer did not use the stairway for business at all. What was dispositive in *Ramos* was use of the elevator for *"business* purposes." *Id.* at 593, 713 *A.*2d 486 (emphasis added). In the Court's words, "when an employer uses a common area for business purposes, the common area is, *by virtue of that use,* subject to the employer's control[.]" *Ibid.* (emphasis added).

Whenever the *Ramos* Court mentioned the concept of employer control, it was careful to specify that it was the use in the business that was critical: "Because [the employer] operated the freight elevator for conducting business, [the employer] had control of the elevator." *Id.* at 592, 713 *A.*2d 486. The Court discussed *Novis, Livingstone, Ehrlich,* and *Cressey,* concluding that the relevant factor was whether the employer "used a common area *to conduct its business." Id.* at 593, 713 *A.*2d 486 (emphasis added). In

other words, the Court's opinion in *Ramos* leaves little doubt that merely allowing employees to use a stairway is insufficient for purposes of compensation; the stairway must also be used by the employer to conduct its business.

That reading of *Ramos* makes sense. Employees who regularly use a stairway, elevator or common area when carrying out their employment responsibilities might reasonably consider the area to be part of the employer's premises. Conversely, an injury occurring in an area not used in the employer's business should not be compensable.

The only Appellate Division case to discuss *Ramos* agrees with that interpretation. *See Cannuscio v. Claridge Hotel and Casino,* 319 *N.J.Super.* 342, 354, 725 *A.*2d 135 (App.Div.1999) (distinguishing *Ramos* because the common area was not "used for business purposes in the same manner the elevator was used in *Ramos* "). "Thus, it is the *employer's* conduct that determines whether it had control over a common area." *Ramos, supra,* 154 *N.J.* at 593, 713 *A.*2d 486 (emphasis added). In the present case, the employer did not use the stairway for business purposes; thus, petitioner's injuries are not compensable even under an expansive reading of *Ramos.*

*Ramos* ' treatment of *Livingstone* and *Ehrlich* also is noteworthy. *Ramos* indicated that *Livingstone* implied control over a parking lot "in which employees were told to park," and that *Ehrlich* implied control over a staircase "on which employees were told to travel[.]" *Id.* at 592, 713 *A.*2d 486. In other words, *Ramos* verifies the limited reach of *Livingstone* discussed above, *i.e.,* that control over an area exists only when the employer requires that the employees use that common area and restricts that area to the exclusive use of its employees. Those elements of control are lacking in the present case.

## IV.

"The Workers' Compensation Act ... is a carefully constructed legislative plan for providing benefits to workers injured in the

workplace. [The Act] represents the Legislature's best judgment on the appropriate allocation between employers and employees of the costs and benefits for such injuries." *Ramos, supra,* 154 *N.J.* at 598, 713 *A.*2d 486 (Pollock, J., dissenting). My concern is that the majority's interpretation may serve to upset the delicate balance struck, increase costs for consumers, and disadvantage the very employees the Act is intended to help.

Moreover, injuries such as petitioner's are not fairly the employer's responsibility because the employee was not forced to undertake any special or added hazard. Nor did the employer benefit from the employee's use of the stairway. I note also that to hold an injury of this kind non-compensable in the workers' compensation context would not itself foreclose a future employee from recovering from a responsible party under traditional tort principles.

Such policy debates, in any event, are not our concern. They belong within the domain of the Legislature, not the courts. "A court's task is not to rewrite the Act to impose [its] allocation of costs and benefits . . ., but to recognize the allocation made by the Legislature." *Id.* at 602, 713 *A.*2d 486 (Pollock, J., dissenting). When the Act was amended in 1979, the Legislature could have chosen to allow compensability for accidents occurring in all areas used by employees. Lawmakers rejected that option, specifying instead that areas not under the control of the employer should be excluded from coverage. We must not gainsay that choice, especially when it was made in direct response to earlier decisions whereby we expressed a contrary view on the scope of compensability.

I am guided by Justice Pollock's observation that, "[o]ccasional disagreement on an appellate tribunal is inevitable. As regrettable as disagreement may be, the exposition of different views may serve the public interest. My perception of the facts and law lead me to a conclusion opposite from that of the majority. Consequently, I respectfully dissent." *State v. P.Z.,* 152 *N.J.* 86, 121, 703 *A.*2d 901 (1997) (Pollock, J., dissenting).

## V.

For the reasons stated, I would vacate our grant of certification or, alternatively, affirm the Appellate Division.

*For reversal and remandment*— Chief Justice PORITZ, and Justices O'HERN, STEIN, COLEMAN and LaVECCHIA—5.

*For affirmance*—Justices VERNIERO and LONG—2.