782 A.2d 978

MARY BRADLEY, PETITIONER–RESPONDENT, v. STATE
OF NEW JERSEY, RESPONDENT–APPELLANT.

PHILIP J. PLUMERI, PETITIONER–RESPONDENT, v. STATE
OF NEW JERSEY, RESPONDENT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued October 11, 2001—Decided October 31, 2001.

Before Judges CONLEY, LEFELT and LISA.

*Michael O'Brien,* Deputy Attorney General, argued the cause for appellant *(John J. Farmer, Jr.,* Attorney General of New Jersey, attorney; *Mary C. Jacobson,* Assistant Attorney General, of counsel; *Mr. O'Brien,* on the brief).

*Mary Siobhan Brennan* argued the cause for respondent in A–5211–99T5.

*Gary E. Adams* argued the cause for respondent in A–4829–99T5 *(Pellettieri, Rabstein and Altman,* attorneys; *Mr. Adams,* of counsel and on the brief).

The opinion of the court was delivered by

CONLEY, P.J.A.D.

These back-to-back appeals, consolidated for the purpose of a single opinion, arise from a Workers' Compensation Judge's conclusion that the judicial unification, accomplished through constitutional amendment and legislative enactments, insofar as it impacts upon parking facilities for former county employees transferred to State employment in the unified judicial system, imposes an obligation upon the State to assume workers' compensation benefits for such employees when they are injured in their designated parking location or while en route therefrom to or from their work sites, despite the location's nonState ownership. We affirm the award of compensation benefits in both of these appeals but we do so on a different, more narrow basis.

*I.*

The proceedings below were consolidated for the testimony of the State's witness; they were not consolidated for the testimony of the individual petitioners. In setting forth the facts, we combine the proceedings.

Philip J. Plumeri has been a Probation Officer employed by the State Judiciary, assigned to the Mercer County vicinage, since January 1995. Before January 1995, he performed the same job under the employment of the County of Mercer. The change of employers was due to a transfer pursuant to a constitutional amendment and the ensuing State Judicial Unification Act and the Judicial Employees Unification Act. *N.J.S.A.* 2B:10–1 to –9; *N.J.S.A.* 2B:11–1 to –12; *N.J. Const.* Art. VI, § VIII. Prior to and immediately following the transfer, Plumeri performed his job at the Mercer County Administration Building located on Broad Street, Trenton. As of October 1995, his department was relocated to the new Family Court building, also on Broad Street.

Mary E. Bradley, prior to January 1995, had been a Mercer County employee for about thirty-eight years during which she first was a court clerk and then a senior court clerk. After the judicial unification enactments in 1995, Bradley became a State employee. At the time of the unification, she worked in the "old" courthouse on Broad Street. In October 1995, she was relocated to the "new" courthouse, also on Broad Street.

After the transfer, parking was assigned to both Plumeri and Bradley through their respective State supervisors. They were required to complete a form detailing automobile information and were issued a parking placard for their designated parking areas. Both were assigned by their State employer to the Mercer County parking garage located between Broad Street and Market Street and which is now used solely for State employee and Mercer County employee parking. Of the 600 permits issued for parking in that garage, 350 have been issued to State employees.

The parking garage is gated and manned by a security guard. It has two entrances, one on Livingston Street and one on Market Street. A vehicle entering the Market Street side of the garage has access only to half of the facility. Likewise, a vehicle entering the Livingston Street side has access only to that half of the facility. Plumeri was instructed by his State employer to use the Market Street entrance and, thus, the portion of the garage accessible by that entrance. Bradley was instructed by her State employer to use the Livingston Street entrance and, thus, the portion of the garage accessible by that entrance.

There are street meters in the immediate area of the garage. There are also nearby State owned and managed parking lots used exclusively for State employees assigned to those lots. Plumeri and Bradley were authorized only to park in their assigned sections of the Mercer County garage and were not permitted access to any of the nearby State owned lots. Indeed, Plumeri had been instructed, as had his co-employee probation officers, that if he parked in any of the other State parking lots, he would be ticketed.

As we have said, the garage to which Plumeri and Bradley were assigned their parking privileges is County owned. Prior to the judicial unification legislation, the Market Street entrance was open to the public, with assigned parking as well for county employees. The Livingston Street entrance was open only to county employees assigned to park there. The record reflects that after the legislation, "when [the employee parking] transition did occur, there was a written agreement" which covered a number of other matters as well. The record does not contain that agreement or any other written document delineating the use of the garage for the once County now State employees.[1] But the record clearly reflects that the State insisted on free parking for

---

[1] The State has included in its appendix a ten-page "letter of Agreement dated December 28, 1994." It appears to be a labor relations document concerning the transfer and the impacted employee benefits. It does not expressly address parking and was not part of the record below.

those employees. Indeed, after the unification, the Market Street entrance was no longer accessible to the public, presumably because of the need for additional parking space for the employees transferred to State payroll. And, while the permits for employee parking in the facility are issued by the County, it is evident that that is just a formality for the State employees, as no State employee who has been assigned by the State to park in that garage, and whose "credentials"[2] otherwise are satisfactory, has been denied a permit by the County.

Although the State has prevailed upon the County to permit State employees to use the garage, maintenance of the garage is performed by the County. Requests by the State, however, are generally responded to. For example, if there is a pothole or materials left lying about, the State employer requests correction by the County and it usually will be rectified. The County has never declined to honor a maintenance request of the State employer.

On December 19, 1996, Plumeri drove to work in the morning and entered the garage through the Market Street entrance. He parked his car and began his access route to his work site. As he was walking towards the courthouse, he tripped and fell over a steel I-beam that was on the garage walkway, fracturing a knee. According to Plumeri, the I-beam had been in the same position since October 1995.

On January 22, 1997, Bradley left her work site in the courthouse at the end of the day. She was proceeding on her usual egress route to her vehicle. She went through the back door of the building, accessible only by court employees and which is located near the Livingston Street entrance. In order to access that entrance, she was required to cross Livingston Street. As she did so, she slipped and fell, fracturing her pelvis.

---

[2] According to the County Risk Manager and Real Estate Manager, one permit application by a State employee was denied because the employee lived in Pennsylvania.

## II.

Compensation for personal injuries arising out of and in the course of employment shall be made by the employer without regard to the negligence of the employer, according to an enumerated remedies schedule. *N.J.S.A.* 34:15-7. The only burden on the petitioner employee, aside from proving damages, is to make a factual showing that the injury arose out of and occurred in the course of employment. The course of employment is defined as:

Employment shall be deemed to commence when an employee arrives at the employer's place of employment to report for work and shall terminate when the employee leaves the employer's place of employment, excluding areas not under the control of the employer. . . .

[*N.J.S.A.* 34:15-36.]

It was the State's position below, as it is before us, that Plumeri and Bradley were injured on "off-site" locations which were not within the ownership or control of their State employer and that, therefore, the "premises rule" precludes compensation, citing *Kristiansen v. Morgan,* 153 *N.J.* 298, 316, 708 *A.*2d 1173 (1998) ("The 'going and coming rule' that existed in workers' compensation jurisprudence since the inception of the [Workers' Compensation] Act was abrogated by the 1979 amendments to the Act."), *modified on other grounds,* 158 *N.J.* 681, 730 *A.*2d 1289 (1999), and *Ramos v. M & F Fashions, Inc.,* 154 *N.J.* 583, 591, 713 *A.*2d 486 (1998) ("The premises rule distinguishes between an accident that occurred on the employer's premises and one that did not. . . . The premises rule was designed to overcome the expansive exceptions to its application that occurred under the going-and-coming rule.").

In rejecting the State's contentions and concluding both Plumeri's and Bradley's injuries were compensable, the Workers' Compensation Judge said:

The State of New Jersey through constitutional amendment and legislative enactment, required that these parking facilities be supplied to the employees at no cost to the State. This requirement was placed upon each individual county and the counties were not only obligated to supply the parking facilities free of charge, as a result of litigation brought by Morris, Camden and Bergen Counties [*Board of Chosen Freeholders of County of Morris v. State of New Jersey,* 159 *N.J.* 565, 732

A.2d 1053 (1999)], [but] are required to construct, expand or renovate any courthouses or facilities at no cost.

For the State to constitutionally require the parking facilities for their employees and require that these facilities be supplied free of charge by the county on one hand and on the other hand claim that it is not responsible from a Workers' Compensation standpoint for their employees being injured after having parked at these facilities, flies . . . in the face of reason. . . .

We do not necessarily agree with the Judge's legal conclusions that the unification enactments required the County to provide "free" parking for those County employees who became State employees as a result of the judicial unification. *Board of Chosen Freeholders of County of Morris v. State*, 159 *N.J.* 565, 732 *A.*2d 1053 (1999), holding that the State is not obligated to assume capital costs, did not concern employee parking.

■ We need not resolve that issue as the record plainly reflects that, in fact, the State provided the transferred employees with parking and did so through an arrangement with the County pursuant to which Plumeri and Bradley, among others, were given parking in certain designated locations—Plumeri in the Mercer County parking facility through the Market Street access and Bradley in that facility through the Livingston Street access. We are convinced these circumstances establish the compensability of the injuries to both Plumeri and Bradley as they arose out of and occurred during the course of their respective employment with the State and fall under the premises rule, within the meaning of the Workers' Compensation Act. We need not, and do not, comment further upon the Workers' Compensation Judge's rationale for awarding compensation benefits.

We do not write on a clean slate. Employer compensability for accidents occurring in a designated employee parking lot or the worksite access/egress route has been the subject of a number of prior decisions. *See generally* 1 Arthur Larson and Lex K. Larson, *Larson's Workers' Compensation Law*, § 13.04(2) (2001); A. Stephens, Annotation, *Workers' Compensation: Coverage of Injury Occurring in Parking Lot Provided by Employer, While Employee Was Going to or Coming From Work*, 4 *A.L.R.*5th 443

(1992). We begin with *Livingstone v. Abraham & Straus, Inc.,* 111 *N.J.* 89, 543 *A.*2d 45 (1988).

In *Livingstone,* petitioner's employer was a tenant in a retail shopping mall. Its employees, pursuant to the rental agreement with the mall, were permitted to park in the mall's parking lot. There was nothing in that agreement which designated an exclusive area of the lot for its employees, but Abraham & Straus requested its employees to park only at the outermost edge of the lot, so as to leave more convenient parking for customers. Petitioner was injured one morning after parking her car and while walking through the lot to her employer's entrance.

In concluding the injury was compensable under the Workers' Compensation Act and not precluded by the "going and coming" rule discarded by the 1979 amendment to the Act, the Supreme Court first found nothing in the legislative history of the amendment to reveal a legislative intent to overrule prior parking lot decisions. *Id.* at 102, 543 *A.*2d 45. Those decisions had, generally, held that "parking lots owned, maintained or provided by employers were to be considered as part of the employer's premises, and that injuries occurring in such lots before or after the actual work day arose out of and in the course of employment." *Id.* at 99–100, 543 *A.*2d 45 (citing *Konitch v. Hartung,* 81 *N.J.Super.* 376, 195 *A.*2d 649 (App.Div.1963), *certif. denied,* 41 *N.J.* 389, 197 *A.*2d 15 (1964); *Rice v. Pharmaceuticals, Inc.,* 65 *N.J.Super.* 579, 168 *A.*2d 201 (App.Div.1961); *Lewis v. Walter Scott & Co., Inc.,* 50 *N.J.Super.* 283, 141 *A.*2d 807 (App.Div.1958); *Buerkle v. United Parcel Serv.,* 26 *N.J.Super.* 404, 98 *A.*2d 327 (App.Div. 1953)). Observing post 1979 amendment precedent which construed the 1979 amendment as primarily attempting to eliminate compensability for "off-premises, lunch-break-type accidents" and for "special hazards ... on route to the employer's premises," the Court concluded "we are persuaded that the Legislature impliedly approved of the principle established by [the prior parking lot] cases, namely, that lots owned, maintained, or used by employers for employee parking are part of the employer's premises, and had

no intent to affect the validity of such decisions." *Id.* at 102, 543 A.2d 45. "The omission of any provision purporting to overrule or limit the reach of the parking-lot cases, in light of the comprehensive nature of the amendment, indicates that the Legislature considered these cases to be consistent with the economic trade-offs struck by the Act, and therefore in need of no correction." *Id.* at 102–03, 543 A.2d 45.

Because the parking lot was not owned or maintained by Abraham & Straus, the argument was asserted that coverage was precluded because of the exclusion for "areas not under the control of the employer." *N.J.S.A.* 34:15–36.[3] Turning its attention to this contention, the Court, guided by the "general standard for coverage, *N.J.S.A.* 34:15–7," and, again, the legislative intent not to affect the pre-amendment parking lot cases, *id.* at 104, 543 A.2d 45, concluded that "[i]rrespective of whether [the employer's] parking directive [for its employees to use only the outermost edge of the lot] was 'enforced' by one of its security guards [thereby demonstrating control over the lot], we believe [the employee's] workday commenced when she arrived in her car at the section of the mall lot adjacent to [the employer's] premises, and therefore was in the course of employment when the accident occurred." *Ibid.* In so concluding, the Court cited *Konitch v. Hartung, supra,* 81 *N.J.Super.* at 378–83, 195 A.2d 649, observing *Konitch's* holding of compensability where an employee was injured in a parking lot "made available" to employees, *id.* at 378, 195 A.2d 649, but apparently not owned by the employer. "Our

---

[3] *Livingstone* came to the Supreme Court by virtue of a dissent filed with our majority opinion. *Livingstone v. Abraham & Straus,* 216 *N.J.Super.* 685, 692, 524 A.2d 876 (App.Div.1987) (Michels, P.J.A.D., dissenting). We observed in our majority opinion that "[t]he compensation judge and our dissenting colleague have relied on the absence of employer 'control' of the parking lots in a property sense. Under this view of *N.J.S.A.* 34:15–36, if the employer does not exclusively maintain or exercise other exclusive mechanical incidents of control over the parking area, and if all users of the parking lot, including its patrons, are subject to the same risks of use, the 'going and coming rule' would preclude a workers' compensation award here." 216 *N.J.Super.* at 690–91, 524 A.2d 876.

Courts have held that the employer's parking lot [owned or otherwise] is part of the employment premises, . . . ." *Konitch, supra,* 81 *N.J.Super.* at 382–83, 195 *A.*2d 649.

Thus, in *Livingstone,* "[t]he fact that Abraham & Straus neither owned, maintained, nor had the right exclusively to use this area of the lot, does not, in our view, render her injuries noncompensable." *Id.* at 104, 543 *A.*2d 45. The guiding principle in *Livingstone,* then, is that an employer provided parking lot to which an employee is assigned parking, regardless of whether the lot is employer owned, maintained or exclusively used, is within the premises rule. *See Manole v. Carvellas,* 229 *N.J.Super.* 138, 550 *A.*2d 1278 (App.Div.1988) ("In brief, the Supreme Court in *Livingstone* concluded that the 1979 amendment of *N.J.S.A.* 34:15–36, which imposed a more stringent definition of employment than had evolved from judicial construction of the going and coming rule, was not intended to overrule the body of case law which fixed the commencement of the day's employment at the time of arrival in the parking lot made available to employees by the employer. Thus, the Court held in *Livingstone* that employer ownership of the lot or even exclusive control thereover was not essential to a finding of compensability in the circumstances there-the principle of the parking lot cases continued to apply even if the employer had merely designated a section of the common area for its employees." *Id.* at 142, 550 *A.*2d 1278. Because, however, at the time of the accident the employee had not yet arrived at the employer designated parking area, the injuries were not compensable under the Workers' Compensation Act. *Id.* at 143, 550 *A.*2d 1278.). *Compare Serrano v. Apple Container,* 236 *N.J.Super.* 216, 565 *A.*2d 417 (App.Div.1989), *certif. denied,* 121 *N.J.* 591, 583 *A.*2d 298 (1990) (petitioner, who had left his employer's parking lot and was taking a shortcut through adjacent parking lot to gain access to public roadway when injured, was not in the course of his employment and was injured on premises not under the control of his employer).

Our decision in *Ehrlich v. Strawbridge & Clothier,* 260 *N.J.Super.* 89, 615 *A.*2d 286 (App.Div.1992), *certif. denied,* 133 *N.J.* 435, 627 *A.*2d 1141 (1993) (employee who was injured when she fell on the sidewalk after exiting a metal staircase designated by her employer for access and egress and which led to an exterior sidewalk which petitioner had to traverse to get to the parking lot where her car was parked was entitled to workers' compensation benefits), follows *Livingstone.* In *Ehrlich* we said: "Although the staircase and the adjacent sidewalk leading from the employee door was not a part of the store premises in a property sense, the [employer] exercised control over the area in that it 'used' both of them in the conduct of its business, by requiring employees to enter and exit the store by traversing that area." *Id.* at 92, 615 *A.*2d 286.

The Supreme Court's recent decision in *Kristiansen v. Morgan, supra,* 153 *N.J.* 298, 708 *A.*2d 1173, is also instructive. There petitioner was a bridge operator employed by the New Jersey Department of Transportation. He was assigned to the Victory Bridge which is owned and maintained by NJDOT. He, as did the other NJDOT employees assigned to the bridge, parked his car in a lot located under the bridge and owned by the Hess Oil Company. NJDOT had two other parking lots it owned but it allowed NJDOT employees to park in the Hess lot as well. The access/egress route to both the Hess and NJDOT lots from the work site was the same. Petitioner was injured while walking on this route to his car at the end of his work shift. The fact that petitioner had not parked in an NJDOT lot was not dispositive. The Court concluded State workers' compensation benefits applied because to gain access to his parking, petitioner had to traverse the route he was taking at the time of his injury which took him across State owned and maintained property. In this respect, the Court said "[t]his case is no different than the case of an employee who punches out on the time clock at the front entrance and is injured while walking through the plant to reach his or her car parked in a rear parking lot." *Id.* at 317, 708 *A.*2d 1173. Because the injury occurred on State owned property, the Court saw the

"question whether NJDOT controlled the Hess lot [as] simply a red herring." *Ibid.* However, it did consider the phrase in *N.J.S.A.* 34:15–36 "excluding areas not under the control of the employer." The Court observed that that phrase was added by the Legislature "because it intended to include areas controlled by the employer within the definition. That phrase was intended to make clear that the premises rule can entail more than the four walls of an office or plant." *Id.* at 316, 708 *A.*2d 1173.

Here, it is undisputed that both Plumeri and Bradley were provided parking by the State at the County facility. This was, however, not simply a situation of there being a nearby parking lot available in common to all. These employees were designated to certain parking areas, albeit they did not have reserved slots in those areas. It is not disputed that State owned parking areas were not available to either. Indeed Plumeri was told his vehicle would be ticketed if he parked in those areas. We reject as lacking any sense of reality the State's assertion that it had no active role in where Plumeri and Bradley would park because they could have chosen to park at their expense on the streets in Trenton. The fact is, as in *Livingstone,* the State provided both employees with parking and instructed them where to go. Clearly, under the parking lot principle, this type of employer provided parking is within the premises rule.

■ Just as clearly, the State's lack of ownership or direct maintenance of the lot does not raise the specter of the exclusion in *N.J.S.A.* 34:15–36. We recognize the record is less than clear as to what exactly the arrangements were between the County and the State, except that those arrangements did not include a shifting of ownership or maintenance responsibilities. But there is no question that the State prevailed upon the County to make the Livingston Street/Market Street garage available for use by its employees without charge to the employees. That use, moreover, is not minimal. As we have said, of the 600 parking permits issued by the County, 350 are for State employee parking. Indeed, apparently as a result thereof, the Market Street access was

closed to public use. Given these circumstances, we are convinced the State uses the designated parking areas in its business, just as much as did the employers in *Livingstone* and *Ehrlich*, and, further, that the situs of the injuries here were within the control of the State and, thus, within the scope of compensable employment, just as much as was the situs of the injury in *Kristiansen*, albeit, unlike *Kristiansen*, the situs here were not actually owned, maintained or exclusively used by the State.

Our decision is further informed by the Supreme Court decisions in *Brower v. ICT Group*, 164 *N.J.* 367, 753 *A.*2d 1045 (2000), and *Ramos v. M & F Fashions, Inc.*, 154 *N.J.* 583, 713 *A.*2d 486 (1998). In *Ramos*, petitioner was injured when he fell down the shaft of a freight elevator in the building in which his employer was a fourth-floor tenant. There was one other tenant on the fourth floor. The elevator was one of two means of access. The other means of access was a stairway. Use of either was by choice; petitioner commonly used the elevator, both to access and egress his employer's offices as well as during the day to transport the employer's materials. On the day of the accident, petitioner was in the process of using the elevator to access his work site at the beginning of the workday. In concluding petitioner's employer was responsible for workers' compensation benefits, the Court found that it "did, in fact, regularly use the freight elevator for business purposes," *id.* at 592, 713 *A.*2d 486, based upon the fact that its employees used the elevator to move its fabric and clothing between the ground floor and the fourth floor and used it for access and egress, *ibid.* The Court was satisfied the premises rule was met, as the employer had control of the elevator. It observed:

> Control in this context imports the notion of the capacity, ability or power to occupy, possess or use. There is no suggestion that control for one purpose does not authorize control for other purposes. Rather, when an employer uses a common area for business purposes, the common area is, by virtue of that use, subject to the employer's control and considered part of the employer's premises within the intendment of the Workers' Compensation Act.

> [*Id.* at 592–93, 713 *A.*2d 486.]

The lack of exclusive use was not determinative. *Id.* at 593, 713 *A.*2d 486 ("[t]he phrase [in *N.J.S.A.* 34:15–36] 'excluding areas not under the control of the employer' does not relate to concepts of exclusive control or duties of maintenance ... but, rather, implies only use by the employer in the conduct of his business'") (quoting *Cressey v. Campus Chefs, Div. of CVI Serv., Inc.,* 204 *N.J.Super.* 337, 343, 498 *A.*2d 1274 (App.Div.1985)). "[I]t is the employer's conduct that determines whether it had control over a common area." *Ramos, supra,* 154 *N.J.* at 593, 713 *A.*2d 486.

In *Brower v. ICT Group,* 164 *N.J.* 367, 753 *A.*2d 1045 (2000), petitioner was injured when, after punching out at the end of her work day and egressing the two-story multi-tenant building in which her employer was a tenant, she fell on a stairway in the rear of the building. The stairway led from the basement to the second floor and had an outside entrance on the ground level. At the second floor, it opened only into the employer's leased space. Access was also available from an elevator and another stairway in the front of the building. Petitioner's employer did not dictate which means of access or egress its employees were to use. Nonetheless, and regardless of whether the stairway was or was not part of the employer's leased premises, the situs of the accident was found compensable. *Id.* at 373, 753 *A.*2d 1045. The Court said:

> In *Ramos, supra,* we concluded that *where the employer has the right to control its employees' use of property for ingress or egress to its place of employment, and an accident occurs on that property, the accident is compensable.* 154 *N.J.* at 593–94, 713 *A.*2d 486. .. The foregoing principles are consistent with the social policy of liberally construing the Act to implement the legislative policy of affording coverage to as many workers as possible.
>
> [164 *N.J.* at 373, 753 *A.*2d 1045 (emphasis added).]

The Court noted that the employer knew or should have known its employees were using the back stairs and could have but did not prohibit that and, thus, "ratified its employees' use of that stairway for ingress and egress." *Id.* at 373, 753 *A.*2d 1045. The Court also observed that given the physical location of the stairway, it could not be considered a common area but rather used only for employee access and egress. *Id.* at 374, 753 *A.*2d 1045.

Like the employers in *Ramos* and *Brower,* the State obviously had the ability, indeed the right, to control its employees' use of the parking facility at issue here, and, thus, the access/egress route to their work site. To begin with, it prevailed upon the County to permit such use. Moreover, it designated which particular area of the facility its employees would use, *i.e.,* that accessible by the Market Street entrance and that accessible by the Livingston Street entrance. Not unimportantly, it prohibited these employees from using nearby State owned parking lots. We are comfortable in concluding that the State "control[ed] its employees' use of property for ingress or egress to its place of employment. . . ." *Brower, supra,* 164 *N.J.* at 373, 753 *A.2d* 1045 (citing *Ramos, supra,* 154 *N.J.* at 593–94, 713 *A.2d* 486), and, as well, controlled the parking facility for its own purposes, *Brower, supra,* 164 *N.J.* at 373–74, 753 *A.2d* 1045. We are also comfortable with our conclusion of compensability as it is fully consistent with the pre 1979 amendment parking lot cases which the Supreme Court has expressly held continue to be viable. *Livingstone v. Abraham & Straus, supra,* 111 *N.J.* at 99–100, 102–03, 104, 543 *A.2d* 45.

Finally, we reject the State's contention that this case is governed by *Novis v. Rosenbluth Travel,* 138 *N.J.* 92, 649 *A.2d* 69 (1994). In *Novis,* petitioner, who was employed as a reservationist, occasionally was required to work at off-site locations. At the time of the accident, she was temporarily working in her employer's Connecticut branch office. The office was located in a building in which there were many tenants, only one of which was petitioner's employer. There was a parking lot across the street from the building in which the tenants' employees and visitors could park. There is no indication, however, that such parking was by employer designation. Petitioner was injured after she parked her car in the lot and was crossing the street to the building. Concluding that the facts were insufficient to establish any exercise of control by the employer over the lot or the access/egress route, the Court concluded that petitioner's accident did not occur within the premises rule and that at the time of the

accident she had not yet commenced her employment. 138 *N.J.* at 96, 649 *A*.2d 69. *Accord, Cannuscio v. Claridge Hotel and Casino,* 319 *N.J.Super.* 342, 725 *A.*2d 135 (App.Div.1999) (petitioner who was assaulted on the public sidewalk as she was walking away from her employer's Administration Office Building where she had picked up her paycheck was not injured in the course of her employment).

*Novis* is inapposite. Unlike Plumeri and Bradley, the employee in *Novis* was not designated to a particular parking lot nor work site access/egress route. The parking lot was simply a lot adjacent to the multi-tenanted building available for common use. There is, moreover, nothing in the record that would suggest that the employer had any role in providing the use of the lot for employee parking. Here, the State and those employees designated to park in the Mercer County facility did not simply "share the lot with the other" users. *Novis v. Rosenbluth Travel supra,* 138 *N.J.* at 96, 649 *A*.2d 69. The State dictated which parking area petitioners could use and prevailed upon the County to provide that use. We are convinced *Livingstone* is directly on point.

For these reasons, therefore, we affirm the judgments awarding compensation benefits to Plumeri and Bradley.