**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0438-15T1

BEVERLY GOULD,

    Petitioner-Respondent/
    Cross-Appellant,

v.

CORIZON HEALTH OF NJ,

    Respondent-Appellant/
    Cross-Respondent.

_____

        Argued December 13, 2016 — Decided August 7, 2017

        Before Judges Messano and Guadagno.

        On appeal from the New Jersey Department of
        Labor and Workforce Development, Division of
        Workers' Compensation, Claim Petition No.
        2013-1691.

        Christopher M. Campanaro argued the cause
        for appellant/cross-respondent (Brown &
        Connery, LLP, attorneys; Michael Huber, on
        the briefs).

        Scott D. Schulman argued the cause for
        respondent/cross-appellant (Petrillo &
        Goldberg, PC, attorneys; Jeffrey M. Thiel,
        on the brief).

PER CURIAM

On August 11, 2015, a judge of compensation, entered an order, finding that petitioner, Beverly Gould suffered a compensable injury while in the employ of respondent, Corizon Health of New Jersey (Corizon), and directing Corizon to provide Gould with temporary disability benefits, medical treatment, payment for medical bills incurred, and out-of-pocket expenses for related medical care. Gould, a licensed professional nurse, fell in a parking lot owned by Burlington County after completing her shift at the County Correctional Work Release Center (CWRC), in Pemberton. The judge determined that the parking lot was part of Gould's workplace and her injury arose out of and in the course of her employment with Corizon.

Corizon now appeals from that order, arguing that Gould's injuries are not compensable under N.J.S.A. 34:15-36. Gould cross-appeals maintaining the judge correctly determined that her injuries arose in the course of her employment with Corizon. Alternatively, if we find her injury is not compensable, Gould claims she should be deemed a special employee of both Burlington County and Corizon.

In 2005, Gould began working for Dr. Evans who had contracted with Burlington County to provide medical services at

the Mt. Holly Jail. In November 2010, Corizon was awarded the inmate medical services contract for Burlington County jails and hired Gould to continue to provide nursing services at Mt. Holly. In February 2011, Corizon transferred Gould to the CWRC in Pemberton.

The Pemberton CWRC was owned and operated by Burlington County. The facility has only one parking lot available for its employees, contractors, vendors, and visitors. A few spaces are reserved for the warden, superintendent, and the handicapped, with the remaining spaces available on a first-come, first-served basis. The Burlington County Highway Department was responsible for maintaining the parking lot.

On March 29, 2012, Gould had just completed her shift and was walking to her car in the parking lot. In her testimony before the judge of compensation, Gould explained how she fell:

> I was walking and they had, not too long finished, it was like under construction to make like a handicap, lower the ground to make a handicapped accessible area, so we were walking through that and it's like, I tripped and because like it wasn't even, it was left all ragged, you know, but I didn't see that ahead of time and I tripped.

Gould fell, landing on her right knee. Three officers who were with her helped Gould back to the facility where she was evaluated by the nurse on call. Gould informed her supervisor,

Maureen Haar, of her accident and sought authorization for medical treatment. Haar advised Gould that she could not receive workers' compensation and would have to see her own doctor.

The following day, Gould saw her personal physician, Dr. Dorfner who recommended she not return to work and referred her to an orthopedist, Dr. Barr. Dr. Barr examined Gould on April 23, 2012, and diagnosed her with a sprain of the right knee. He prescribed physical therapy and recommended that she not return to work. Gould attempted to return to work on May 2, 2012, but experienced leg and back pain. Gould returned to work on June 19, 2012, after she ran out of sick leave.

Gould filed a claim petition seeking workers' compensation benefits from Corizon on January 22, 2013. After Corizon opposed Gould's petition, she filed an amended petition adding Burlington County as a named employer.

On January 29, 2013, an MRI revealed Gould suffered a torn meniscus and partial tear of the anterior cruciate ligament. After several injections to Gould's knee failed to provide relief, Dr. Barr referred her to Dr. Paz, who recommend a total right knee replacement.

In May or June 2013, Gould was notified by mail that she had been terminated by Corizon. On September 22, 2014, Gould

filed a motion for temporary disability benefits and coverage of knee replacement surgery by Dr. Paz. Corizon and Burlington County contested the matter and it was tried on three dates between April and June 2015.

On August 11, 2015, the judge of compensation rendered an oral decision. First, the judge found that Burlington County was not a dual or special employer and dismissed it from the case. Next, the judge analyzed N.J.S.A. 34:15-36, which prohibits compensation for accidents occurring in areas outside of the employer's control, and the "special mission" exception to the "going and coming" rule which allows compensation if an employee is

> 1. required to be away from the conventional place of employment;
>
> 2. if actually engaged in the direct performance of employment duties.
>
> [Zelasko v. Refrigerated Food Express, 128 N.J. 329, 336 (1992).]

The judge determined that, because Gould's assignment required her to occasionally travel to other facilities, the first prong of the special mission test was satisfied. As to the second prong, the judge found Gould

> was an off site — off premises employee for Corizon working at the Pemberton jail. She tripped in the parking lot while walking to her car at the end of her shift, [Gould] was

not commuting or engaging in any personal activities when she fell.

The judge concluded that Gould's fall in the parking lot "arose out of and in the course of her off premises work at the jail and that her injuries are compensable under the 'Special Missions' exception to the premises rule."

On appeal, Corizon argues that Gould was not on a special mission when she was injured; she had completed her work shift at her regular place of employment, and was leaving the prison facility. Corizon also argues that it did not own or control the premises where Gould's injury occurred as the parking lot was owned and maintained by Burlington County.

In a workers' compensation case, we must defer to the factual findings and legal conclusions of the judge of compensation as long as they "could reasonably have been reached on sufficient credible evidence present in the record[.]" Lindquist v. City of Jersey City Fire Dep't, 175 N.J. 244, 262 (2003) (quoting Close v. Kordulak Bros., 44 N.J. 589, 599 (1965)). However, legal questions "are not entitled to any deference" and are subject to plenary review on appeal. Hersh v. Cty. of Morris, 217 N.J. 236, 243 (2014).

The Workers' Compensation Act (WCA) requires employers to compensate employees for injuries "arising out of and in the

course of employment[.]" N.J.S.A. 34:15-7. Before 1979, the Act did not define "employment." Over time, the "going and coming rule" developed as a "judicially created doctrine which ordinarily precludes the award of workers' compensation benefits for accidental injuries sustained during routine travel to and from an employee's regular place of work." Watson v. Nassau Inn, 74 N.J. 155, 158 (1977).

In 1979, the WCA was amended, defining "employment" more restrictively, and eliminating many of the judicially-created exceptions. See N.J.S.A. 34:15-36; Hersh, supra, 217 N.J. at 244. Those amendments defined when employment begins and ends:

> Employment shall be deemed to commence when an employee arrives at the employer's place of employment to report for work and shall terminate when the employee leaves the employer's place of employment, excluding areas not under the control of the employer[.]
>
> [N.J.S.A. 34:15-36.]

The 1979 amendments replaced the "going and coming rule" with the "premises rule" which "is based on the notion that an injury to an employee that happens going to or coming from work arises out of and in the course of employment if the injury takes place on the employer's premises." Kristiansen v. Morgan, 153 N.J. 298, 316 (1997) (citing Cressey v. Campus Chefs, Div. of CVI Serv., Inc., 204 N.J. Super. 337, 342-43 (App. Div.

1985)).  The Legislature's use of the phrase "excluding areas not under the control of the employer" was "intended to make clear that the premises rule can entail more than the four walls of an office or plant."  Ibid.  The pivotal questions under the premises rule are (1) where was the situs of the accident, and (2) did the employer have control of the property on which the accident occurred.  Livingstone v. Abraham & Straus, Inc., 111 N.J. 89, 96-97 (1988).

Gould's accident occurred in a parking lot used by prison and Corizon employees which was owned and maintained by Burlington County.  However, Burlington's ownership of the lot is not dispositive, as Gould's injuries may be compensable if Corizon exercised control over the parking lot.  Hersh, supra, 217 N.J. at 245.  Control exists when the employer owns, maintains, or has exclusive use of the property.  Livingstone, supra, 111 N.J. at 104.

In Livingstone, employees of a store in a mall were required to park in the far corner of the mall parking lot to leave room for mall customers.  Id. at 91.  As the plaintiff-employee was walking from her car to the employees' entrance, she was struck by a car, sustained injuries, and sought compensation.  Ibid.  A divided Court held that the plaintiff was entitled to compensation because the store dictated that she had

to park in a remote area of the parking lot and exposed her to the added risk for the store's benefit and convenience. Id. at 105-06.

In other cases involving employees injured in a parking lot while walking to or from their place of business, we have focused on whether the employer required the employees to enter or exit the employer's building by traversing the area where the accident occurred.

Ehrlich v. Strawbridge & Clothier, 260 N.J. Super. 89, 90 (App. Div. 1992), certif. denied, 133 N.J. 435 (1993), involved an employee who was injured when she fell on the sidewalk after exiting a metal staircase designated by her employer for ingress and egress. The staircase led to an exterior sidewalk that the employee had to travel on in order to reach the parking lot where her car was located. Ibid. We held the employee was entitled to workers' compensation benefits, reasoning, "[a]lthough the staircase and adjacent sidewalk leading from the employee door was not a part of the store premises in a property sense," the employer controlled the areas because it instructed the employees which route to use to enter and exit the employer's establishment. Id. at 92.

In Bradley v. State, 344 N.J. Super. 568 (App. Div. 2001), we held that injuries sustained by state employees while

traveling to work from a county-owned parking lot were compensable because the employer's control over the parking lot required each employee to follow a specific ingress and egress route from the parking lot to the building, even though it was not owned by the employer. Id. at 582. We held, "where the employer has the right to control its employees' use of property for ingress or egress to its place of employment, and an accident occurs on that property, the accident is compensable." Id. at 581 (citing Ramos v. M & F Fashions, 154 N.J. 583, 593-94 (1998)).

More recently, in Hersh, supra, the Court addressed employer control under the premises rule, concluding that an employee injured walking two blocks between her employer-provided parking garage and her office building would not be compensated under the WCA because the employer did not have control over the garage or over the public street where the injury occurred when a car ran a red light. 217 N.J. at 238.

Unlike Hersh, Gould's injury did not occur on a public street, where the employer had no control, but in the only parking available for all jail visitors and employees. Although there is no evidence that Gould was actually directed by Corizon to park in the Pemberton lot, there was no other lot provided.

Corizon's contract[1] with Burlington County required the presence of a medical professional at each jail facility on a twenty-four hour basis.  Lieutenant Matthew Leith, of the Burlington County Corrections Department, testified the Administrative Code imposed a similar requirement.[2]  The primary duty of the nurse was to provide medical care for the male and female inmates, but if a correction officer, outside vendor, or a visitor to the jail was in need of treatment, the nurse would provide care on a limited basis.  Leith also testified that the Pemberton CWRC had a daily medical call at 4:00 a.m., when

---

[1] During the testimony, the terms "contract" and request for proposal or "RFP" were used interchangeably.

[2] N.J.A.C. 10A:16-2.9(c) states:

> the minimum requirements for a correctional facility infirmary shall include, but not be limited to:
>
> 1.  A physician or advanced practice nurse on call 24 hours per day, seven days per week;
>
> 2.  A Supervising Registered Nurse on site at least one shift within a 24-hour period, seven days per week;
>
> 3.  All inmates being maintained within sight or sound of a medical staff person[.]

diabetic inmates would have their blood checked before breakfast and other inmates could have certain treatments.

After Gould was transferred from the Mt. Holly jail to the Pemberton CWRC, she was assigned to work from 11:00 p.m. to 7:00 a.m. Gould would return once or twice a year to Mt. Holly for meetings. When working at Pemberton, Gould's movements inside the institution were restricted and she was accompanied by a corrections officer whenever she saw an inmate in the clinic or in a jail cell. She could not bring a cell phone into the facility and if the nurse for the next shift did not show up in time, she had to stay until her relief arrived.

Pictures introduced at the hearing indicate that the parking lot is located immediately adjacent to the prison, is enclosed by a fence, and is accessed by a long road through a wooded area. Clearly, the lot is intended for the use of employees and visitors to the prison and equally clear, they have no alternative but to park in this lot.

Given the nature of Gould's employment at the Pemberton CWRC requiring Corizon to provide medical services on a twenty-four hour basis, the dedicated parking lot with restricted access, we are satisfied that, like the plaintiff in Livingstone, Gould's workday commenced when she arrived at the parking lot in her car and ended after she left to drive home.

Therefore, her injury occurred during the course of her employment. See Livingstone, supra, 111 N.J. at 104. The fact that Corizon "neither owned, maintained, nor had the right exclusively to use this area of the lot, does not, in our view, render her injuries noncompensable." Ibid.

As we are affirming the decision of the judge of compensation that the jail parking lot was part of the premises of the jail and Gould's workplace included the parking lot, we need not address her conclusion that Gould's injuries were compensable under the "special mission" exception.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0438-15T1